**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
:
In re: : Chapter 11
:
The Weinstein Company Holdings LLC, *et al.*, : Case No. 18-10601 (MFW)
:
Debtors.[1] : (Jointly Administered)
:
:
------------------------------------------------------------- x
:
Lantern Entertainment LLC, :
: Adv. Pro. No. 18-50924 (MFW)
Plaintiff, :
:
vs. :
:
Bruce Cohen Productions, and Bruce Cohen, :
:
Defendants. :
-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT TO DETERMINE THE**
**NONEXECUTORY NATURE OF A CONTRACT**

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS .................................................................................................................................... 2

    A.    The Contract Parties Entered Into and Substantially Completed Performance Under the Agreement Years Ago ........................................................................................ 2

    B.    The Debtors File for Chapter 11 ........................................................................... 4

ARGUMENT ......................................................................................................................... 6

    I.    LEGAL STANDARD ...................................................................................... 6

    II.    THE AGREEMENT IS NOT EXECUTORY ................................................... 7

    A.    A Contract Is Not Executory Where the Parties Have Substantially Performed. ........... 7

    B.    The Parties to the Agreement Have Substantially Performed the Material Obligations Thereunder. ...................................................................................................... 9

    C.    Any Remaining Obligations Under the Agreement Are Immaterial ............................ 14

    III.    ANY AND ALL RIGHTS OR ASSETS OF THE DEBTORS PURSUANT TO THE AGREEMENT WERE TRANSFERRED TO LANTERN UNDER THE APA PURSUANT TO BANKRUPTCY CODE SECTION 363 ........................................ 18

CONCLUSION .................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bright Beginnings Day Care, Inc. v. Driftwood Day Camp, Inc.*,
    791 N.Y.S.2d 624 (App. Div. 2005) ...................................................................................17

*DB Structured Prods. v. Am. Home Mortg. Holdings, Inc.* (*In re Am. Home
    Mortg. Holdings, Inc.*),
    402 B.R. 87 (Bankr. D. Del. 2009) .....................................................................................18

*Enter. Energy Corp. v. United States ex rel. I.R.S.* (*In re Columbia Gas Sys. Inc.*),
    50 F.3d 233 (3d Cir. 1995)...................................................................................7, 8, 14, 16

*In re Exide Techs.*,
    607 F.3d 957 (3d Cir. 2010).................................................................................... *passim*

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,
    209 F.3d 252 (3d Cir. 2000).................................................................................................18

*Foothills Tex. Inc. v. MTGLO Inv'rs, L.P.* (*In re Foothills Tex., Inc.*),
    476 B.R. 143 (Bankr. D. Del. 2012) ...............................................................................7, 8

*Foros Advisors LLC v. Dig. Globe, Inc.*,
    No. 17-CV-7514 (JGK), 2018 WL 4521200 (S.D.N.Y. Sept. 21, 2018)...............................16

*Greenfield v. Philles Records, Inc.*,
    780 N.E.2d 166 (N.Y. 2002).................................................................................................9

*In re Learning Publ'ns, Inc.*,
    94 B.R. 763 (Bankr. M.D. Fla. 1988) .............................................................................12, 13

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976).......................................................................................8, 10, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................................................7

*In re Qintex Entm't, Inc.*,
    950 F.2d 1492 (9th Cir. 1991) ......................................................................................11, 15, 18

*In re Relativity Fashion, LLC*,
    No. 15-11989 (MEW) (Bankr. S.D.N.Y. 2015).....................................................................13

*In re S.A. Holding Co., LLC*,
    357 B.R. 51 (Bankr. D.N.J. 2006) ....................................................................................7, 9

#50560076 v1

*S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp.*,
   826 N.E.2d 806 (N.Y. 2005) ....................................................................10

*In re Stein & Day Inc.*,
   81 B.R. 263 (Bankr. S.D.N.Y. 1988) ...............................................11, 12, 15, 16

*W.W.W. Assocs., Inc. v. Giancontieri*,
   566 N.E.2d 639 (N.Y. 1990) ...............................................................9, 10

*In re Waste Sys. Int'l, Inc.*,
   280 B.R. 824 (Bankr. D. Del. 2002) .......................................................7, 14

## Statutes

11 U.S.C. § 363 .................................................................................. *passim*

11 U.S.C. § 365 ...............................................................................1, 5, 7, 15, 16

N.Y. Gen. Oblig. Law § 5-701(a)(1) (2018) ...............................................17

## Other Authorities

Fed. R. Civ. P. 56 .................................................................................1, 7

Fed. R. Bankr. P. 7056 .............................................................................1

*Work*, Black's Law Dictionary (10th ed. 2014) ...........................................3

#50560076 v1

Lantern Entertainment LLC ("Lantern" or the "Plaintiff"), by and through its undersigned counsel, hereby submits this memorandum of law ("Memorandum of Law") in support of its motion (the "Motion") for entry of an order substantially in the form attached to the Motion as **Exhibit A** (the "Proposed Order"), pursuant to Federal Rule of Civil Procedure 56, and Rule 7056 of the Federal Rules of Bankruptcy Procedure, determining that no genuine issues of material fact exist regarding whether a specified contract is executory pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").  In support of the Motion, Plaintiff respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The film *Silver Linings Playbook* (the "Picture") completed production and was released nationwide and internationally in November 2012.  Defendant Bruce Cohen ("Cohen") was one of the three producers of the film.  Cohen entered into a contract with The Weinstein Company Holdings LLC ("The Weinstein Company" and, collectively with its affiliated debtors and debtors in possession, the "Debtors") to render his production services for the film *Silver Linings Playbook* on September 21, 2011 (the "Agreement").  While several ancillary obligations remained even after the Picture was released in theaters, the primary purpose of the Agreement was to retain Cohen to produce and release the Picture.  Because all parties to the Agreement completed their material obligations years ago and in any event long before March 19, 2018— the date The Weinstein Company filed its petition for bankruptcy—the Agreement is a nonexecutory contract.

2.      The Court need not look beyond the four corners of the Agreement to establish that all material obligations owed by both counterparties have been fulfilled.  Indeed, courts have ruled that work-for-hire contracts are not executory when the work that is the subject of the

1

contract was completed prior to the petition date, even when the contract includes ongoing obligations, like the warranties, indemnification rights, and negotiation rights at issue here. Accordingly, Lantern asks this Court to enter judgment in its favor and declare that the Agreement is not executory and, thus, the rights acquired under the Agreement by The Weinstein Company were properly transferred to Lantern pursuant to Bankruptcy Code section 363 and in accordance with the APA and Sale Order, as those terms are defined below.

## FACTS

A.    **The Contract Parties Entered Into and Substantially Completed Performance Under the Agreement Years Ago**

3.    Cohen and The Weinstein Company entered into the Agreement pursuant to which Cohen agreed to provide production services for the Picture in 2011.[2]  A true and correct copy of the Agreement is attached as Exhibit A to the Declaration of Irwin Reiter ("Reiter Decl.").  As acknowledged at the beginning of the Agreement, the purpose of the Agreement was to set forth the agreed upon terms for Cohen's production services for the Picture.  For example, the subject of the Agreement is "'Silver Linings Playbook' / Bruce Cohen / Producing Services Agreement."  Agreement at 1; *see also id*. ("This letter shall confirm the principal terms of the agreement . . . in connection with the producing services of Artist in connection with the motion picture project currently entitled 'Silver Linings Playbook.'").  The first paragraph of the Agreement explains Cohen's services as those "customarily rendered by individual producers in

---

[2]    The Agreement was entered into between SLP Films, Inc. ("SLP Films") and Bruce Cohen Productions f/s/o Bruce Cohen, on behalf of Bruce Cohen, who is referred to as "Artist."  *See* Agreement at 1.  This Memorandum of Law will refer to both Cohen and his production company as "Cohen."  Upon SLP Films' final delivery of the Picture to SLPTWC Films, LLC ("SLP"), SLP assumed SLP Films' obligations under the Agreement.  Upon SLP's subsequent dissolution, its sole member, The Weinstein Company LLC—a wholly-owned subsidiary of The Weinstein Company—assumed the rights to and performed the obligations under the Agreement.  *See* Reiter Decl. ¶ 4.

2

the motion picture industry for first-class motion pictures in connection with the pre-production, production and post production of the Picture." *Id.* ¶ 1.

4.      In return, The Weinstein Company was to pay Cohen fixed and contingent compensation, which were both tied directly to the production and success of the Picture. For example, Cohen's fixed compensation of $250,000 was divided into payments paid according to Cohen's production progress. *See id.* ¶ 2 (20% of fixed compensation to be paid in the weeks preceding principal photography and 80% payable weekly during principal photography).

5.      Virtually all of the other rights and obligations under the Agreement are similarly related to the main purpose of the Agreement—Cohen's production of the Picture—and thus are confined to the production timeframe. For example, The Weinstein Company agreed to: (i) include a "produced by" credit to Cohen on screen in the main title in a particular font and style (*id.* ¶ 4); (ii) arrange certain travel accommodations to Cohen "for the purposes of rendering services in connection with [the] Picture" (*id.* ¶ 5); (iii) "consult with [Cohen] . . . with regard to key creative matters (i.e., principal cast, location, key crew, music, composer, final screenplay) in connection with the Picture" (*id.* ¶ 6); and (iv) provide Cohen with an exclusive assistant "for Artist's use in connection with Picture-related matters" (*id.* ¶ 7). In return, Cohen agreed that his work in the Picture was deemed a "work-made-for-hire" owned wholly and exclusively by The Weinstein Company. *Id.* ¶ 9.[3]

6.      The Agreement also references peripheral continuing rights and obligations which are not related to Cohen's production of the Picture. For example, the Agreement provides Cohen with the first opportunity to negotiate terms to produce another, as-of-yet nonexistent film—a purely hypothetical remake of or sequel to the Picture. This opportunity to negotiate

---

[3]   A "work for hire" is "[a] copyrightable work produced either by an employee within the scope of employment or by an independent contractor under a written agreement; esp., a work specially ordered or commissioned for use as . . . (4) a part of a movie or other audiovisual work." *Work*, Black's Law Dictionary (10th ed. 2014).

3

survives for seven years after the release of the Picture.  *Id.* ¶ 13.  The Agreement provides that the parties have 30 days to negotiate such terms, after which time, if no agreement is reached, The Weinstein Company has a right to engage with another producer.  *Id.*

7.      The Agreement also includes a "Certificate of Engagement," whereby various warranties and indemnifications are provided.  For example, Cohen warrants that the material he creates "is or will be original or in the public domain and does not infringe upon or violate any copyright or right of privacy or any other right of any person."  *Id.* Ex. A (Certificate of Engagement).  Additionally, it provides that Cohen "agree[s] to hold [The Weinstein Company] and its successors, licensees and assigns harmless from and against all damages, losses, costs and expenses (including reasonable outside attorneys' fees and costs) which [The Weinstein Company] or any of its successors, licensees or assigns may suffer or incur" by reason of the breach of certain warranties made.  *Id.* at 11.  It also provides that The Weinstein Company shall defend, indemnify, and hold Cohen harmless from any liability in connection with any third-party claim or action respecting material supplied to Cohen by The Weinstein Company.  *Id.*

8.      Cohen completed production of the Picture in 2012, and the film was released in November of that year.  *See* Reiter Decl. ¶ 5; *see also Objection of Bruce Cohen Productions and Bruce Cohen to Debtors' Statement Regarding Contracts to Be Transferred Pursuant to the Asset Purchase Agreement with Lantern Entertainment LLC; and Reservation of Rights* [D.I. 1045] (the "Cohen Objection") ¶ 26 ("*Silver Linings Playbook* was completed in 2012 . . . .").

**B.      The Debtors File for Chapter 11**

9.      On March 19, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

10.      On May 9, 2018, the Court entered an order approving the sale of substantially all of the Debtors' assets to Lantern as contemplated in that certain Asset Purchase Agreement dated

4

March 19, 2018 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "APA") [D.I. 846] (the "Sale Order").[4]  The APA provides that, to the extent a contract is deemed to be nonexecutory, Lantern acquired all contractual rights owned by The Weinstein Company under that contract "free and clear of all Liens . . . to the fullest extent permitted by Section 363 of the Bankruptcy Code."  APA § 7.5 [D.I. 846-1, at 36].  The sale to Lantern closed on July 13, 2018 [D.I. 1247].

11.    Much of the procedural history of the present issues has already been briefed for the Court in numerous pleadings.  *See, e.g.,* *Motion for Order Establishing Streamlined Procedures to Resolve Objections to the Potential Assignment of Certain Executory Contracts and Unexpired Leases to Lantern Entertainment LLC* [D.I. 1282] (the "Procedures Motion"); *Omnibus Reply in Support of Motion for Order Establishing Streamlined Procedures to Resolve Objections to the Potential Assignment of Certain Executory Contracts and Unexpired Leases to Lantern Entertainment LLC* [D.I. 1394-1].

12.    Relevant to this Memorandum of Law is the Debtors' June 8, 2018 notice regarding contracts that it considered to be not executory and that, therefore, need not be assumed and could be acquired as assets and transferred pursuant to Bankruptcy Code section 365.  *See Debtors' Statement Regarding Contracts to Be Transferred Pursuant to the Asset Purchase Agreement with Lantern Entertainment LLC* [D.I. 1003] (the "June 8 Statement").

13.    On June 18, 2018, Cohen filed his response to the June 8 Statement, primarily disputing that the Agreement was not executory and thus could not be transferred to Lantern.  *See generally* Cohen Objection.  Cohen argued that the following allegedly material obligations render the Agreement executory: (1) the Agreement requires him to make warranties regarding

---

[4]    Terms not defined herein shall have the meaning ascribed to them in the APA.

5

the originality of his work and also includes a mutual indemnification clause regarding any damages relating to breach of such warranties; (2) the Agreement gives him a right of first opportunity to negotiate terms to direct a remake of or sequel to the Picture; and (3) the Agreement provides that the Company can use his likeness in promotional films.   Cohen Objection ¶¶ 23-27.

14.    On August 1, 2018, Lantern filed the Procedures Motion.  The Procedures Motion sought an order establishing streamlined procedures to, *inter alia*, resolve various objections filed to the June 8 Statement by contract counterparties, including the Cohen Objection.

15.    On August 23, 2018, the Court heard argument on the Procedures Motion. Counsel for various contract counterparties, including Cohen, argued that the June 8 Statement was not a proper vehicle for asking the Court to determine the executory nature of certain contracts.  In response, the Court directed Lantern to file "a motion or an adversary, to determine what [its] rights are" under Rule 6006.  Aug. 23, 2018 Hr'g Tr. at 54:25–55:2.  In response, Lantern filed a Complaint on October 17, 2018 commencing this adversary proceeding [D.I. 1].

16.    Plaintiff has filed the Motion because no genuine issues of material fact exist to dispute that the Agreement is a nonexecutory contract and, thus, was properly transferred to Lantern pursuant to Bankruptcy Code section 363.

## ARGUMENT

## I.    LEGAL STANDARD

17.    Summary judgment "shall be rendered" if all the evidence in the record shows "that there is no genuine dispute as to any material fact and [that] the [moving party] is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial."  *Matsushita Elec.*

6

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." *Id.*

## II.    THE AGREEMENT IS NOT EXECUTORY

### A.    A Contract Is Not Executory Where the Parties Have Substantially Performed.

18.    A contract is only executory under Bankruptcy Code section 365 if "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."  *Enter. Energy Corp. v. United States ex rel. I.R.S.* (*In re Columbia Gas Sys. Inc.*), 50 F.3d 233, 239 (3d Cir. 1995); *see also In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 827 (Bankr. D. Del. 2002) (Walrath, J.) ("The Third Circuit has emphasized that the court must determine whether the failure to perform an obligation under the contract would constitute a material breach.").  As the Third Circuit has explained, "substantial performance will preclude rejection, as the contract cannot be materially breached and, therefore, cannot constitute an executory contract."  *Foothills Tex. Inc. v. MTGLO Inv'rs, L.P.* (*In re Foothills Tex., Inc.*), 476 B.R. 143, 156 (Bankr. D. Del. 2012) (citing *In re Exide Techs.*, 607 F.3d 957, 963 (3d Cir. 2010), as amended June 24, 2010).  "The question becomes 'whether both parties have tendered adequate performance of the contract at the time of the filing.'"  *In re S.A. Holding Co., LLC*, 357 B.R. 51, 57 (Bankr. D.N.J. 2006) (quoting *In re Sigel & Co.*, 923 F.2d 142, 144–45 (9th Cir. 1991)); *see also In re Foothills Tex., Inc.*, 476 B.R. at 155 ("[T]he remaining question is did parties owe continuing, material obligations sufficient to render the Instrument executory? If not, the Instrument was not an executory contract subject to rejection.").

7

19.     "In order to determine whether failure to perform the remaining obligations would constitute a material breach, [courts] consider contract principles under the relevant nonbankruptcy law." *In re Columbia Gas*, 50 F.3d at 241 n.10.  "Under New York law,[5] a material breach, 'which justif[ies] the other party to suspend his own performance,' is 'a breach which is so substantial as to defeat the purpose of the entire transaction.'" *In re Exide*, 607 F.3d at 962 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976)). Critically, however, "when a breaching party has substantially performed before breaching, the other party's performance is not excused." *Id.* at 963 (citation omitted) (internal quotation marks omitted).

20.     *Exide*, in which the Third Circuit applied New York law in determining that the contract before it was not executory because the parties had substantially performed, is instructive here.  The contract at issue in *Exide* granted EnerSys a perpetual, royalty-free license to use the Exide trademark in the industrial battery business for a fixed price.  607 F.3d at 961. Almost ten years later, Exide reentered the battery business and sought to reject the contract when filing for bankruptcy.  The bankruptcy court held that the contract was executory, and the district court affirmed.  The Third Circuit, however, vacated these orders.

21.     The *Exide* court first noted that it must determine whether the contract "contained at least one obligation for both Exide and EnerSys that would constitute a material breach under New York law if not performed.  If not, the Agreement is not an executory contract."  607 F.3d at 962.  The court then utilized a balancing test espoused by New York's high court to determine whether the parties had substantially performed such that no material obligations remained—a test that takes into account "the ratio of the performance already rendered to that unperformed."

---

5    The Agreement's choice-of-law provision states that New York law applies.  Agreement ¶ 23.

*Id*. at 963 (quoting *Hadden v. Consol. Edison Co.*, 312 N.E.2d 445, 449 (N.Y. 1974)).  The *Exide* court found that "performance rendered outweighs . . . performance remaining," given that EnerSys had been operating under the contract for ten years pursuant to "the purpose of the agreement" regarding the transfer of Exide's battery business to EnerSys.  Any other remaining obligations were "minor" and did not relate to the purpose of the agreement, which was the transfer of the industrial battery business.  *Id*. at 963-64.  As such, no material obligations remained and the contract was determined to be nonexecutory.  *Id*.

> **B.    The Parties to the Agreement Have Substantially Performed the Material Obligations Thereunder.**

22.    In examining whether a contract is executory, the court must begin "with the text of the Agreement itself."  *In re S.A. Holding Co.*, 357 B.R. at 57; *see also Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002) ("The best evidence of what parties to a written agreement intend is what they say in their writing. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." (citations omitted) (internal quotation marks omitted)).  Where the language of the agreement is "clear and unambiguous," the court need not consider "additional extrinsic evidence offered by the parties."  *In re S.A. Holding Co.*, 357 B.R. at 58; *see also W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing.").  Whether a contract is ambiguous is a question of law for the courts to resolve.  *W.W.W. Assocs.*, 566 N.E.2d at 642; *see also S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp.*, 826 N.E.2d 806, 809 (N.Y. 2005) ("[E]xtrinsic evidence may not be considered unless the document itself is ambiguous."); *Lipsky*, 551 F.2d at 896 (noting that under New York law, if the parties' intent is unambiguous, the court should not consider extrinsic evidence).

#50560076 v1

23.     Here, the text of the Agreement clearly states that its principal purpose is the production of the Picture.  The Agreement is titled "Producing Services Agreement."  Agreement at 1.  The first sentence states that the purpose of the Agreement is "the producing services of Artist [Cohen] in connection with the motion picture project currently entitled 'Silver Linings Playbook' (the 'Picture')" and states that Cohen is to "render all services customarily rendered by individual producers in the motion picture industry for first-class motion pictures in connection with the pre-production, production and post production of the Picture."  *Id*.  Cohen's compensation is tied to the progress of the Picture's production.  *Id*. at 2.

24.     Other terms in the Agreement confirm that the parties' principal obligations are connected to Cohen's production of the Picture.  *Id.* ¶ 4 (providing Cohen with "Produced by" credit in second position "provided that the Picture is produced with Artist as producer thereof"); *id.* ¶ 6 (stating that the "Company shall consult with Artist . . . with regard to key creative matters (i.e., principal cast, location, key crew, music, composer, final screenplay) in connection with the Picture"); *id.* ¶ 5 (The Weinstein Company promises to arrange certain travel accommodations to Cohen "for the purpose of rendering services in connection with [the] Picture."); *id.* ¶ 7 (The Weinstein Company promises to provide Cohen with an exclusive assistant "for Artist's use in connection with Picture-related matters"); *id.* ¶ 12 (describing production specifications according to which Cohen "shall deliver the completed Picture to Company").

25.     The Ninth Circuit's opinion in *In re Qintex Entertainment, Inc.* is instructive on the question of whether a talent agreement is properly considered executory in the context of a future bankruptcy proceeding.  950 F.2d 1492 (9th Cir. 1991).  The *Qintex* court held that four nearly identical television movie contracts entered into with an actor and his agent were not

10

executory because at the time of the bankruptcy filing the actor "had finished acting."  *Id*. at 1497.

26.     The actor and agent in *Qintex* argued that the contract was executory because it included the following ongoing terms *in addition to* the terms regarding his acting services: (1) a future royalty obligation; (2) a promise by the actor and his agent not to sell any production rights to third parties; (3) mutual obligations to indemnify for breaches and cooperate in joint defense with the production company; and (4) a granting of "exclusive rights to use and license [the actor's] name and likeness in connection with these particular movies."  *Id*. at 1494, 1497.

27.     The Ninth Circuit nevertheless held that the actor and his agent had "substantially completed their duties under the contracts" primarily because the actor's acting services were completed, and none of the remaining unperformed duties were substantial.  *Id*. at 1497.  As such, the court affirmed the district court's determination that these contracts were not executory.

28.     Notably, the court also held that an unrelated agreement to colorize and subdistribute colorized versions of four movies was executory where, relevant here, the studio had only colorized two of the four films, because "[a]n essential term of the contract was the colorization of the four films."  950 F.2d at 1496-97.

29.     In reaching its conclusion, the *Qintex* court favorably cited several bankruptcy court decisions holding that work-for-hire contracts were nonexecutory due primarily to the completion of the works prior to the petition date.  *See, e.g.*, *id*. at 1497 (citing *In re Stein & Day Inc.*, 81 B.R. 263 (Bankr. S.D.N.Y. 1988) and *In re Learning Publications, Inc.*, 94 B.R. 763 (Bankr. M.D. Fla. 1988)).

30.    *In re Stein and Day, Inc*. is particularly relevant to the issues presented here.  In that case, the court held that two book publication contracts were not executory where the books at issue had been published at the time of the bankruptcy petition, even though the agreement included the following ongoing rights and obligations:  (1) payment of royalties by the publisher; (2) accounting by the publisher; (3) the publisher's right to apply for a copyright in the author's name; (4) an obligation on the owner of the copyright to join an infringement lawsuit if the non-owner party to the agreement decided to sue; (5) warranties by the author as to both ownership and non-infringement; (6) indemnification by author related to any breach of such warranties; and (7) the publisher's option to publish the author's next book "on terms to be arranged."  *In re Stein & Day*, 81 B.R. at 264-65.

31.    Because the parties did not dispute that the debtor had published the books according to the terms of the agreement, the court focused on the author's remaining obligations. *Id*. at 266-67.  The court utilized the Third Circuit definition of an executory contract when it held that "the author has fully performed all of the terms of the publishing agreement": the author had written the two books and assigned to the debtor the right to print, publish and sell them and to license others to do so.  As such, "[t]he author has no further obligations to perform for the publisher under the agreements, which if not performed by the author would constitute a material breach which would excuse the publisher from its obligation to pay royalties."  *Id*. at 266.

32.    Notably, none of the author's remaining obligations rendered the contract executory.  For example, the author's agreement "to indemnify the publisher in the event that the author's warranties as to ownership of the books is not sustained . . . is an obligation that is imposed by law and does not constitute a *significant independent obligation* which would cause

12

the author's performance under the agreements to be viewed as incomplete and executory." *Id*. (emphasis added).

33.     Nor did the option to the debtor publisher to publish the next book "on terms to be agreed" render the contract executory.  The court reasoned that the option was essentially a "contingent publication right," which "amounts to nothing more than an opportunity afforded to the publisher to receive first notice of the author's desire to publish his next book, if any, and an opportunity to negotiate terms more satisfactory than other publishers might offer."  Because the contract term did not commit the author to the publisher, the right of first notice to another book "is not a significant undertaking on the author's part with respect to his obligations under the publishing agreements as to the two books in question." *Id*. at 266-267.

34.     In sum, the court ruled that because the work that formed the subject and main purpose of the contract was already completed, the agreements at issue were not executory. *Id*. at 267; *see also In re Learning Publ'ns, Inc*., 94 B.R. at 765 (denying authors' motion to compel the debtor publisher to assume or reject the publication agreement because, where the book at issue had been published at the time of the bankruptcy petition, contract was nonexecutory despite publisher's ongoing obligation to pay royalties); *cf. Plan Proponent's Fourth Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 1572] (the "Relativity Plan"), *In re Relativity Fashion, LLC*, No. 15-11989 (MEW) (Bankr. S.D.N.Y. 2015) (treating participation agreements[6] for released films as nonexecutory contracts and unreleased films as executory).

---

[6]   Under the Relativity Plan, "Participation Agreements" means "agreements that provide for, among other things, payments from future revenues to actors, directors, writers, producers and other entities based on prior work performed in connection with the motion pictures in the Debtors' film library, including producer royalties and fees payable for merchandising and music rights.  For the avoidance of doubt, unless otherwise provided for herein, participations owed by the Debtors under Participation Agreements executed prior to the Petition Date, whether such participations are owed prior to or on and after the Effective Date, will be treated as prepetition

13

35.     Here, as in all of the above-cited cases, the parties' material obligations arise from and end with production of the Picture.  Because production was completed years ago, the Agreement does not contain "obligation[s] of both the bankrupt and the other part[ies] to the contract[s] [that] are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."  *In re Columbia Gas*, 50 F.3d at 239 (citations omitted) (internal quotation marks omitted).  Therefore, the Agreement is not executory.

### C.     Any Remaining Obligations Under the Agreement Are Immaterial.

36.      Here, none of the allegedly unperformed obligations, to the extent any exist, render the Agreement executory.  As courts have recognized, "it is the rare agreement that does not involve unperformed obligations on either side."  *In re Columbia Gas*, 50 F.3d at 238 (quoting *Mitchell v. Streets* (*In re Streets & Beard Farm P'ship*), 882 F.2d 233, 235 (7th Cir. 1989)).  It is therefore axiomatic that "not every contract that appears executory because it has not been completely performed is executory for purposes of § 365."  *Id.* at 244 n.20.  "As one commentator observed, '[a]ll contracts to a greater or less extent are executory.  When they cease to be so, they cease to be contracts.'"  *Id.* at 238 (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 450 (1973) (citation omitted)); *cf. In re Waste Sys.*, 280 B.R. at 827 (contract is nonexecutory even where non-compete and confidentiality obligations are ongoing).  The *Exide* court also recognized that unperformed obligations do not necessarily render a contract executory when it applied a balancing test of obligations performed and unperformed.  607 F.3d at 963 (holding that the remaining four

---

claims against the Debtors because they arise under prepetition agreements and contracts that are not executory contracts."  Relativity Plan at art. I.A.109.

obligations of the contract at issue "do not outweigh the substantial performance rendered and received by EnerSys.").

37.     Cohen will undoubtedly claim that a number of provisions contained in the Agreement remain unperformed: (1) indemnification obligations concerning, *inter alia*, Cohen's "representations, warranties or covenants . . . concerning the Picture" (Agreement ¶ 15); (2) a right to "negotiate[] in good faith" "the first opportunity to render producing services" for subsequent productions related to the Picture (Agreement ¶ 13); and (3) certain approval rights regarding the use of Cohen's "name, voice, approved likeness and approved biographical data" in connection with the Picture (Agreement ¶ 9). *See* Cohen Objection ¶¶ 23-27. Such claims are unavailing.

38.     First, where, as here, the work that is the subject of a work-for-hire contract has been completed, the continuing obligations associated with an indemnification clause will not render that contract executory. *See Qintex*, 950 F.2d at 1497 (contract nonexecutory even where indemnification obligations are ongoing)*; In re Stein & Day*, 81 B.R. 263 (same). As the *Stein & Day* court reasoned, this is especially the case where the indemnification obligation stems from the artist's warranty that their work is original and not infringing on copyright, since such a warranty "is imposed by law and does not constitute a significant independent obligation which would cause the [artist's] performance under the agreements to be viewed as incomplete and executory." 81 B.R. at 266. Because a breach of the warranties and indemnification clauses by either party would not "defeat the purpose of the entire transaction"—which was, of course, the production of the Picture—these terms are not material. *In re Exide*, 607 F.3d at 962 (quoting *Lipsky*, 551 F.2d at 895).

15

39.     Second, the "right of first opportunity" to negotiate terms to produce a remake of or sequel to the Picture likewise does not render the contract executory.  Even assuming that certain conditions are met in next year to trigger this provision,[7] the Agreement merely provides Cohen with the *first opportunity to negotiate* in good faith a contract with as-yet unspecified terms for his production services of a remake of or sequel to the Picture—an as-of-yet nonexistent film.  *See* Agreement ¶ 13.  If, after 30 days of negotiations, no agreement is reached, The Weinstein Company has a right to engage with another producer.  *Id.*

40.     The *Stein & Day* court examined an almost identical option when it determined that a right to negotiate did not create a material ongoing obligation.  81 B.R. at 266-67.  In that case, the contract gave the debtor publisher an option to publish his next book "on terms to be agreed."  *Id.*  The court noted that such a "contingent publication right amounts to nothing more than an opportunity afforded to the publisher to receive first notice of the author's desire to publish his next book, if any, and an opportunity to negotiate terms more satisfactory than other publishers might offer."  *Id.*  Because "[t]he author is not committed to the publisher and may agree to have his next book published by another publisher on more favorable terms than offered by the debtor," the "right of first notice as to another book" was not a significant obligation under the contract.  *Id.*

41.     The same result is particularly warranted here because, under New York law, an "agreement to agree" must not be so "vague and indefinite that there is no basis or standard for

---

[7]   The Agreement lists conditions that must be met prior to November 2019 (seven years after release of the Picture) to trigger this "right": (1) the Debtors choose to create a remake or sequel; (2) Cohen is "active as a producer in the motion picture or television industry"; (3) the Picture was completed at a final below-the-line cost not exceeding 110% of the Debtors' budget; and (4) Cohen is available when required by the Debtors. Agreement (Ex. B) ¶ 13.  The foregoing are mere conditions, not legal duties that the Debtors have any obligation to perform.  *In re Columbia Gas*, 50 F.3d at 241 ("[I]f the remaining obligations in the contract are mere conditions, not duties, then the contract cannot be executory for purposes of § 365 because no material breach could occur.").

deciding whether the agreement has been kept or broken." *Foros Advisors LLC v. Dig. Globe, Inc.*, No. 17-CV-7514 (JGK), 2018 WL 4521200, at *3 (S.D.N.Y. Sept. 21, 2018) (holding that an agreement providing the plaintiff the opportunity to act as a financial advisor during an 18-month period following termination of the agreement was not sufficiently definite to be a binding agreement).[8]

42.     Third, the rights to use and approve Cohen's likeness in promotional films about the production of the Picture is certainly not material, if even relevant at this point.   It is undisputed that the Picture was released *almost six years ago*.   The vast majority (if not all) of the use of Cohen's likeness and approval thereof in connection with promotional material has long passed.   Even assuming the Agreement could have been deemed executory due to the inclusion of this provision in the days and weeks following the release of the Picture, the passage of time has virtually eliminated any potential obligation associated with this provision.   As such, this provision does not render the contract executory.   *See, e.g.*, *In re Exide*, 607 F.3d at 963 (balancing the performance rendered under the contract against the performance remaining and, in finding the contract to be nonexecutory, noting that the parties already operated under the applicable agreement for over ten years).

43.     In short, the fact that the Agreement includes several ongoing rights and obligations that arguably extend beyond the completion of the Picture does not render the Agreement executory.   Given that the parties have performed their material obligations, the

---

[8]   Moreover, under New York's Statute of Frauds, the right of first opportunity clause is unenforceable as the obligations under the Agreement extend for more than a year (and therefore cannot be performed within one year of its making).  Agreement (Ex. B) ¶ 13 ("For a period of seven (7) years after the initial release of the Picture . . . ."); N.Y. Gen. Oblig. Law § 5-701(a)(1) (2018).  Because the right of first opportunity clause does not state all the essential or material terms of that agreement, it fails to satisfy the Statute of Frauds.  *Bright Beginnings Day Care, Inc. v. Driftwood Day Camp, Inc.*, 791 N.Y.S.2d 624, 624 (App. Div. 2005) ("The Supreme Court properly granted summary judgment to the defendants because the right of first refusal, which omitted essential terms and left terms open for future negotiation, was unenforceable under the statute of frauds.").

existence of certain peripheral contractual provisions *does not* change the nonexecutory nature of the agreement.

### III.   ANY AND ALL RIGHTS OR ASSETS OF THE DEBTORS PURSUANT TO THE AGREEMENT WERE TRANSFERRED TO LANTERN UNDER THE APA PURSUANT TO BANKRUPTCY CODE SECTION 363

44.     Because the Agreement is not executory, there is no question that Lantern acquired the rights held thereunder by The Weinstein Company as part of the sale. Nonexecutory contracts and any rights granted thereunder may be sold pursuant to Section 363 of the Bankruptcy Code. *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258–264 (3d Cir. 2000) (holding that Section 363 permits transfer of nonexecutory contracts free and clear of claims); *In re Qintex Entm't, Inc.*, 950 F.2d at 1497 ("The record supports the district court's order that the Scott contracts were not executory and were properly sold pursuant to § 363."); *DB Structured Prods. v. Am. Home Mortg. Holdings, Inc.* (*In re Am. Home Mortg. Holdings, Inc.*), 402 B.R. 87, 94 (Bankr. D. Del. 2009) ("The Court reads *Folger Adam* to stand for the two propositions of particular importance to these proceedings: first, that section 363 of the Bankruptcy Code permits a debtor to transfer its rights and obligations under a non-executory contract; second, that section 363(f)(5) permits the rights and obligations under one non-executory contract to be transferred free and clear of claims arising under other contracts."). Judge Sontchi recognized this basic principle during the hearing on the Debtors' Motion to Amend APA:

> Look, if a contract isn't executory it's one of two things. It's either an asset or a liability. A non-executory contract that provides that the debtor get something is an asset and their buying all the assets. That's clear. If it's a contract that's non-executory where the debtor owes something, it's a liability and they're not assuming the liabilities.

18

Tr. of July 11, 2018 Hr'g at 38:13–19.  Applying the foregoing to the contract at issue here, because the Agreement is not executory, it was properly transferred to Lantern pursuant to Bankruptcy Code section 363.

## **CONCLUSION**

45.     In light of the foregoing, Plaintiff respectfully requests that this Court grant summary judgment in its favor and declare that the Agreement is a nonexecutory contract that was transferred to Lantern pursuant to the Sale Order free and clear of any claims arising thereunder pursuant to Bankruptcy Code section 363.

Dated:  October 18, 2018
Wilmington, DE

Respectfully Submitted,

/s/ Evelyn J. Meltzer
David B. Stratton (No. 960)
Evelyn J. Meltzer (No. 4581)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801
Telephone: (302) 777-6500
Facsimile: (302) 421-8390

-and-

Michael S. Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Joseph L. Sorkin (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Attorneys for Lantern Entertainment LLC*