**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*, | Case No. 18-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| LANTERN ENTERTAINMENT LLC, | Adv. Proc. No. 18-50924 (MFW) |
| Plaintiff, | |
| v. | |
| BRUCE COHEN PRODUCTIONS, and BRUCE COHEN, | |
| Defendants. | |

**ANSWERING BRIEF OF DEFENDANTS BRUCE COHEN PRODUCTIONS
AND BRUCE COHEN IN SUPPORT OF OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Michael I. Gottfried
Roye Zur
LANDAU GOTTFRIED & BERGER LLP
1801 Century park East, Suite 700
Los Angeles, California 90067
Tel: (310) 557-0050
mgottfried@lgbfirm.com
rzur@lgbfirm.com

Christopher P. Simon (No. 3697)
CROSS & SIMON, LLC
1105 North Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19899-1380
Tel: (302) 777-4200
csimon@crosslaw.com

*Attorneys for Defendants Bruce Cohen
Productions and Bruce Cohen*

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS..........................................................1

II.     SUMMARY OF ARGUMENT...................................................................................3

III.    STATEMENT OF FACTS......................................................................................5

        A.      The Cohen Agreement..............................................................................5

        B.      The Debtors' Bankruptcy Cases and the Sale to Lantern.......................................7

IV.     ARGUMENT....................................................................................................10

        A.      Summary Judgement Standard....................................................................10

        B.      Lantern Fails to Meet Its Burden of Demonstrating that The Weinstein
                Company Ever Owned the Cohen Agreement Such that It Could Sell the
                Cohen Agreement to Lantern Pursuant to Section 363.........................................11

        C.      The Cohen Agreement Is Executory...............................................................14

                1.      The Cohen Agreement Expressly Contemplates the Remaining
                        Possibility of a Material Breach Excusing Performance Following
                        Release of the Picture.................................................................15

                2.      In re Exide Technologies and the Doctrine of Substantial
                        Performance Are Inapplicable.......................................................19

                3.      The Rights of First Refusal and Opportunity Render the Cohen
                        Agreement Executory................................................................22

                4.      The Remaining Ongoing Obligations Reflected in the Cohen
                        Agreement Are Material..............................................................27

        D.      Even if Lantern Obtained the Cohen Agreement from TWC Pursuant to
                Section 363, Lantern Is Subject to the Obligations in the Cohen Agreement.......32

        E.      This Adversary Proceeding Is Precluded by the Sale Order................................34

V.      CONCLUSION................................................................................................35

# TABLE OF CITATIONS

## Cases

*166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*,
575 N.E.2d 104 (N.Y. 1991)................................................................26

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).......................................................................11

*Avant Guard Props., LLC v New York City Indus. Dev. Agency*,
2015 N.Y. Misc. LEXIS 4028 (N.Y. Sup. Ct. Jan. 7, 2015).............................20

*Babylon Assocs. v. County of Suffolk*,
475 N.Y.S.2d 869 (N.Y. App. Div. 1984)...................................................27

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................................10

*Cinicola v. Scharffenberger*,
248 F.3d 110 (3d Cir. 2001)..............................................................15

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*,
548 N.E.2d 203 (N.Y. 1989)...............................................................26

*CR Best Rd., LLC v Camps Mogen Avraham, Heller, Sternberg, Inc.*,
960 N.Y.S.2d 545 (N.Y. App. Div. 2013)...................................................26

*DB Structured Prods. v. Am. Home Mortg. Holdings, Inc.*
*(In re Am. Home Mortg. Holdings, Inc.)*,
402 B.R. 87 (Bankr. D. Del. 2009)........................................................32

*Frank Felix Assocs. v. Austin Drugs*,
111 F.3d 284 (2d Cir. 1997)..............................................................27

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*,
209 F.3d 252 (3d Cir. 2000)..............................................................32

*HLI Creditor Trust v. Export Corp. (In re Hayes Lemmerz Int'l, Inc.)*,
313 B.R. 189 (Bankr. D. Del. 2004).......................................................35

*Hirsch v. Allen Products Co., Inc.*,
789 F.2d 230 (3d Cir. 1986)..............................................................11

*Horowitz v. Fed. Kemper Life Assur. Co.*,
57 F.3d 300 (3d Cir. 1995)...............................................................11

*In re A.J. Lane & Co.*,
107 B.R. 435 (Bankr. D. Mass. 1989)...................................................................25

*In re Abitibibowater Inc.*,
418 B.R. 815 (Bankr. D. Del. 2009)..............................................................24, 25

*In re Access Beyond Techs., Inc.*,
237 B.R. 32 (D. Del. Bankr. 1999)......................................................................15

*In re CB Holding Corp.*,
448 B.R. 684 (Bankr. D. Del. 2011).............................................................Passim

*In re Custom Coals Laurel*,
258 B.R. 597 (Bankr. W.D. Pa. 2001)..................................................................12

*In re Exide Technologies*,
607 F.3d 957 (3d Cir. 2010)..............................................................19, 21, 31

*In re General DataComm Indus. v. Arcara (In re General DataComm Indus.)*,
407 F.3d 616 (3d Cir. 2005).................................................................3, 17, 19

*In re Hawker Beechcraft, Inc.*,
486 B.R. 264 (Bankr. S.D.N.Y. 2013)..........................................................Passim

*In re Kellstrom Indus.*,
286 B.R. 833 (Bankr. D. Del. 2002)............................................................Passim

*In re Learning Publications, Inc.*,
94 B.R. 763 (Bankr. M.D. Fla. 1988)...................................................................21

*In re Mariner Post-Acute Network*,
267 B.R. 46 (Bankr. D. Del. 2001).......................................................................12

*In re Qintex Entertainment, Inc.*,
950 F.2d 1492 (9th Cir. 1991)..............................................................................21

*In re Stein & Day Inc.*,
81 B.R. 263 (Bankr. S.D.N.Y. 1988)...........................................................21, 25, 26

*In re WorldCom, Inc.*,
343 B.R. 486 (Bankr. S.D.N.Y. 2006)............................................................29, 30

*Javornick v. UPS*,
2008 U.S. Dist. LEXIS 75569 (W.D. Pa. Sep. 29, 2008)....................................14

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976)..............................................................................4, 27, 30

*Maldonado v. Ramirez*,
757 F.2d 48 (3d Cir. 1985)........................................................................................10, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...................................................................................................11

*Mosley v. City of Pittsburgh Pub. Sch. Dist.*,
2009 U.S. Dist. LEXIS 81174 (W.D. Pa. Sep. 8, 2009)..............................................14

*Ogbudimkpa v. Ashcroft*,
342 F.3d 207 (3d Cir. 2003)......................................................................................35

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*,
172 F.3d 238 (3d Cir. 1999)......................................................................................32

*Williams v. Borough of West Chester*,
891 F.2d 458 (3d. Cir. 1989).....................................................................................10, 13

*Women's Interart Ctr., Inc. v. New York City Economic Dev. Corp.*,
2014 N.Y. Misc. LEXIS 2266 (N.Y. Sup. Ct. Apr. 28, 2014)....................................20

## **Rules**

Fed. R. Civ. P. 56.......................................................................................................Passim

## **Statutes**

11 U.S.C. § 363...........................................................................................................Passim

11 U.S.C. § 365...........................................................................................................Passim

## **Other Points of Authority**

3 COLLIER ON BANKRUPTCY P 363.06.........................................................................12

23 Williston on Contracts § 63:3 (4th ed.)..................................................................21

Defendants Bruce Cohen Productions and Bruce Cohen (collectively, "**Cohen**") hereby submit this answering brief in support of Cohen's opposition to the motion filed by plaintiff Lantern Entertainment LLC ("**Lantern**") for summary judgment (the "**Motion**") in the above-captioned adversary proceeding.  In support of his opposition, Cohen states as follows.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

At the outset of these bankruptcy cases, The Weinstein Company, LLC ("**TWC**") and its affiliated debtors (collectively, the "**Debtors**") began the process of selling substantially all of their assets to Lantern.  As part of the sale process, the Debtors filed multiple "cure notices" containing thousands of contracts that the Debtors potentially would assume and assign to Lantern as part of the sale.

Included in several of the cure notices was Cohen's agreement (the "**Cohen Agreement**") with SLP Films, Inc. ("**SLP Films**"), a single purpose production entity set up by TWC in connection with the making of the motion picture *Silver Linings Playbook* (the "**Picture**").   Cohen timely objected to the cure notice, which reflected a cure amount of approximately $405,000 for the Cohen Agreement.

Months after Cohen filed his cure objection and this Court approved the sale to Lantern (with all of Cohen's rights and objections expressly preserved in the sale order), the Debtors filed (at Lantern's apparent direction) a 4-page "statement" [D.I.[1] 1003] in which they baldly stated that: (a) the Cohen Agreement is not executory and will not be assumed and assigned to Lantern; and that (b) Lantern "purchased" the Cohen Agreement under Section 363.  The statement did not address or analyze a single agreement, did not include any evidence supporting its conclusions, and did not seek affirmative relief.

---

[1]   Unless otherwise stated, all "D.I." references shall be to docket items in the Debtors' main bankruptcy case, Case No. 18-10601-MFW.

On August 1, 2018 (*i.e.*, several weeks after Lantern obtained a $21 million reduction in its purchase price purportedly to allow it to pay participations owed to numerous individuals such as Cohen), Lantern filed a motion seeking "streamlined" procedures to allow Lantern to obtain a declaratory judgment that it obtained various agreements and the rights thereunder – including the Cohen Agreement – pursuant to Section 363 without the need to comply with the assumption and assignment requirements of Section 365 (including the need to cure the millions of dollars in defaults under those agreements). Lantern's motion was predicated on its alleged need to obtain this declaratory judgment by no later than November 8, 2018, which is designated as the last day for Lantern to designate contracts to be assumed and assigned. Numerous parties objected to Lantern's motion, including Cohen.

On August 23, 2018, the Court heard argument on Lantern's motion, in which it declined to set the requested "streamlined" procedures. Although Lantern's counsel stated at the hearing that Lantern would file a motion within one week to extend the November 8, 2018 deadline (because it was important for Lantern to obtain this relief before deciding whether to assume and assign the Cohen Agreement, among others, prior to November 8), Lantern has not filed that motion in the two months since the August 23, 2018 hearing.

Instead, on October 17, 2018, Lantern filed the above-captioned adversary proceeding against Cohen. The next day, October 18, 2018, Lantern filed the Motion. Cohen's response to the Complaint is not yet due and no discovery has been done.

## II.    **SUMMARY OF ARGUMENT**

In its Motion, Lantern seeks summary judgment determining that it "purchased" the Cohen Agreement from the Debtors free and clear of any past and future obligations pursuant to Section 363, and that it did not need to comply with the assumption and assignment provisions of Section 365 because the Cohen Agreement is not executory. The only "evidence" submitted in

support of Lantern's Motion is one incompetent declaration by an employee of Lantern whose conclusory statements are based solely on his "understanding" as a former supervisor in the participations department of TWC.  The portions of Lantern's Motion that do not rely on this declaration simply make conclusory statements not supported by any evidence.  As such, Lantern fails to meet its burdens as a party moving for summary judgment for the following independent reasons.

1.    As a predicate to Lantern's assertion that Lantern obtained the Cohen Agreement from the Debtors pursuant to the Section 363 sale, Lantern needs first to demonstrate that the Cohen Agreement was an asset of the Debtors' estates.  However, on its face, the Cohen Agreement is between Cohen and SLP Films, which is not a debtor.  Lantern fails to meet its burden of showing that the Debtors acquired the Cohen Agreement, were a party to the Cohen Agreement, and were then able to "sell" the Cohen Agreement to Lantern.  The declaration offered by Lantern in support of the Motion and purporting to establish these facts[2] is not made on personal knowledge and is therefore insufficient to meet the summary judgment standard. *See* Fed. R. Civ. P. 56(c).

2.    The Cohen Agreement is executory on its face because it expressly states that a breach of any of its terms by Cohen would excuse performance by SLP Films.  The Third Circuit has held that such contractual language conclusively renders an agreement executory and that no further analysis is required.  *In re General DataComm Indus. v. Arcara (In re General DataComm Indus.)*, 407 F.3d 616, 623 (3d Cir. 2005).

3.    The Cohen Agreement also is executory because it contains a right of first opportunity for Cohen relating to subsequent productions of the Picture and a right of first

---

[2]  The same "facts" are alleged by Lantern solely in a footnote in the Complaint.

refusal for SLP Films in the event that Cohen seeks to sell his right to receive contingent compensation. This Court has held on multiple occasions that rights of first refusal such as those contained in the Cohen Agreement render an agreement executory. *In re CB Holding Corp.*, 448 B.R. 684, 689 (Bankr. D. Del. 2011) (Walrath, J.) (agreeing with "the majority of courts which have held that a right of first refusal is an executory contract subject to rejection under section 365"); *In re Kellstrom Indus.*, 286 B.R. 833, 835 (Bankr. D. Del. 2002) (Walrath, J.) (same). These provisions independently render the Cohen Agreement executory.

4.      Contrary to Lantern's unsupported assertion, the Cohen Agreement imposes multiple material obligations on Cohen that not only survive the making and release of the Picture, but also are clearly intended to enable SLP Films to distribute, exploit, and monetize the Picture (producing the Picture is only one of the purposes of the Cohen Agreement). One such obligation is Cohen's agreement to refrain from seeking to enjoin or restrain SLP Films from exploiting the Picture in the event of a breach by SLP Films. Absent this material obligation (which is found in every talent contract), SLP Films would be unable to exploit and monetize the Picture, and a breach of the obligation by Cohen would defeat the purpose of the entire transaction. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976). This provision also independently renders the Cohen Agreement executory.

5.      Even if Lantern could establish that the Debtors acquired the Cohen Agreement from SLP Films (it has not), that the Cohen Agreement is not executory (it is), and that the Debtors "sold" the Cohen Agreement to Lantern pursuant to Section 363, Lantern could only acquire the Cohen Agreement *cum onere* and is subject to all future obligations owed to Cohen under that agreement.

### III.   STATEMENT OF FACTS

#### A.    The Cohen Agreement

On or about September 21, 2011, Cohen entered into that certain Producing Services Agreement (*i.e.*, the Cohen Agreement) with SLP Films.  Pursuant to the Cohen Agreement, Cohen agreed to, among other things, produce the Picture.  SLP Films agreed to, among other things, pay Cohen fixed compensation (payable through the making of the Picture) and contingent compensation (payable after the making and release of the Picture).

The Cohen Agreement expressly provides that Cohen's failure to comply with <u>any</u> provision of the Cohen Agreement – even after the Picture is produced – would excuse SLP Films' obligation to pay Cohen his contingent compensation.   Paragraph 3 of the Cohen Agreement provides:

> Contingent Compensation:  If the Picture is produced with Artist as the producer thereof and Lender and Artist fully perform all required services and obligations hereunder and in relation to the Picture, **and are not otherwise in breach or default hereof**, Artist shall be entitled to receive the following "Contingent Compensation":

Cohen Agreement, ¶ 3 (emphasis added).   A breach by Cohen similarly would excuse performance by SLP Films of other ongoing obligations as well.  *See*, *e.g.*, *id.*, ¶ 4 ("Company shall accord Artist 'Produced by' credit in second position" provided that Cohen does not breach agreement); *id.*, ¶ 13 (Cohen has right of first opportunity provided that Cohen does not breach agreement).

The Cohen Agreement includes numerous obligations that survive the making and release of the Picture.  The Cohen Agreement provides Cohen a right of first refusal to provide producing services in connection with subsequent productions relating to the Picture.  *Id.*, ¶ 13. Specifically, the Cohen Agreement provides that, for a period of seven years after the release of the Picture (*i.e.*, until November of 2019), Cohen will have the right of first opportunity to

produce a sequel, prequel, or other production based on the Picture.  In that instance, Cohen is given 30 business days "following Company's notice to [Cohen] of the commencement of negotiations for [Cohen's] services" to reach an agreement on the terms of such subsequent production, provided that "the financial terms and conditions for the engagement of [Cohen] shall be no less favorable than those set forth in [the Cohen] Agreement."  *Id*.  If no agreement is reached between the parties within that 30-business-day deadline, "then Company shall have the right to engage alternative producers and shall have no further obligation" to Cohen with respect to such subsequent production.  *Id.*

SLP Films also has a separate right of first refusal.  Paragraph 3.5 of Exhibit CB to the Cohen Agreement (which provides the terms of Cohen's contingent compensation) provides the terms of Cohen's ability to sell or assign his right to receive contingent compensation.  Subparagraph B of paragraph 3.5 provides TWC with a right of first refusal in the event of a proposed assignment by Cohen:

> TWC shall have the right of first refusal with respect to any proposed assignment of [Cohen's] right to receive Contingent Bonus hereunder upon equivalent terms (to the extent economically matchable) offered to [Cohen] by a bona fide third party.  [Cohen] shall notify TWC of the terms of any such proposed assignment and TWC shall have 7 business days within which to elect to accept such terms. [Cohen] shall make no change in such terms which are adverse to [Cohen's] interest without giving TWC the opportunity to accept such changed terms.  If TWC does not elect to accept such terms, then [Cohen] shall be free to accept the proposed terms of assignment from such bona fide third party . . . .

*Id.*, Ex. CB, ¶ 3.5 B.

The Cohen Agreement also contains various provisions relating to the ability of SLP Films/TWC to distribute and exploit the Picture following its production.  Specifically, the Cohen Agreement contains a continuing obligation by Cohen to refrain from seeking to "enjoin or restrain the exhibition, distribution, advertising, exploitation, or marketing of the Picture and/or any rights therein."  *Id.*, ¶ 20.

### B.      The Debtors' Bankruptcy Cases and the Sale to Lantern

On March 19, 2018 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

On March 20, 2018, the Debtors filed the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief and Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [D.I. 8] (the "**Sale Motion**").

Attached to the Sale Motion as Exhibit B was a form of Asset Purchase Agreement ("**APA**") with Lantern.  The APA expressly and specifically provides that Lantern will acquire certain "Purchased Assets" in connection with the sale, including certain film titles listed in Annex 1 to the APA.  One of the films included in Annex 1 to the APA is *Silver Linings Playbook* (the "**Picture**").

On April 6, 2018, the Court entered the *Order (I) (A) Approving Bidding Procedures for Sale of Substantially All of The Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction For, And Hearing to Approve, Sale of Substantially All of The Debtors' Assets, (D) Approving Form and Manner of Notices Of Sale, Auction And Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* (the "**Bidding Procedures Order**") [D.I. 190].

7

The Bidding Procedures Order established a procedure for the potential assumption of certain executory contracts by the Debtors and the assignment of those contracts to the successful purchaser.   Among other things, the Debtors were obligated to file a notice, the "Potential Assumption and Assignment Notice and Contracts Schedule," which "specifies (i) each of the Contracts and Leases that ***may be*** assumed and assigned in connection with the Sale, including the name of each Counterparty and (ii) the proposed Cure Amount with respect to each Contract and Lease."  Bidding Procedures Order, ¶ 24 (emphasis added).

The Debtors have filed multiple pleadings in this case, including numerous notices, representing to the Court and parties the ***potential*** assumption by the Debtors of executory contracts and the assignment of those assumed contracts to Lantern.  [*See* D.I. Nos. 216, 282, 482, 860.]

On May 9, 2018, the Court entered its *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "**Sale Order**") [D.I. 846].

Paragraph 29 of the Sale Order expressly provides that the Debtors will assume "each of the Assumed Contracts and Leases identified on a notice that the Debtors ***will file*** with the Court within (1) Business Day after entry of [the Sale] Order . . . and assign the Assumed Contracts and Leases" to Lantern.  Sale Order, ¶ 29 (emphasis added).  Paragraph 35 of the Sale Order further contains the finding that "[e]ach Assumed Contract and Lease ***constitutes an executory contract*** or unexpired lease under Bankruptcy Code section 365, and all requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and

assignment to [Lantern] of the Assumed Contracts and Leases have been, or will be, satisfied. . . ."  *Id.*, ¶ 35 (emphasis added).

On May 10, 2018, the Debtors filed their *Notice of Filing of Final List of Potentially Assumed Contracts and Leases* (the "**Final Contract List**") [Docket No. 860].   The Final Contract List includes the Cohen Agreement which, by its inclusion in the Final Contract List and pursuant to Paragraph 35 of the Sale Order, the Debtors represented that they determined the Cohen Agreement to be an executory contract, assumable and assignable under the Bankruptcy Code.

On June 8, 2018, the Debtors filed the *Debtors' Statement Regarding Contracts to Be Transferred Pursuant to the Asset Purchase Agreement with Lantern Entertainment LLC* (the "**Statement**") [D.I. 1003].   The Statement "identifies certain non-executory contracts that are being removed from the assumed contracts schedule" under the APA.   Attached as Exhibit A to the Statement is a list of contracts with the Counterparties that the Debtors allegedly have determined are not executory.   Statement, ¶ 6.   The Debtors also allege, without authority or specificity, and contrary to the numerous representations they previously made to the Court and parties-in-interest, that "[n]otwithstanding that the contracts . . . are not executory contracts and are not being assumed and assigned pursuant to Section 365 of the Bankruptcy Code, the Asset Purchase Agreement provides for the purchase, by Lantern, of any rights or assets transferred to the Debtors pursuant to such contracts."  *Id.*, ¶ 7.

On June 18, 2018, certain of the Counterparties whose contracts were listed in the Statement filed objections to the Statement.   In their objections, the Counterparties argued, *inter alia*, that (1) the Sale Order already determined that the contracts listed in the Final Contract List are executory, and that the "dispute" belatedly created by the Statement was barred by the Sale

Order; (2) the Debtors failed to meet their burden of proving that the relevant contracts are not executory; and (3) regardless of whether or not the contracts are executory, Section 2.3 of the APA provides that Lantern will assume all post-Closing obligations arising out of the operation of the Purchased Assets.

On June 27, 2018, the Debtors filed the *Motion for an Order Approving Amendment to Asset Purchase Agreement Entered into by and Between the Debtors and Lantern Entertainment LLC* [D.I. 1115], in which Lantern sought a price reduction of $23 million purportedly to allow Lantern to pay cure amounts owing to various executory contract counterparties, including the Counterparties.  On July 11, 2018, the Court entered an *Order Approving Amendment to Asset Purchase Agreement Entered into by and Between the Debtors and Lantern Entertainment LLC* [D.I. 1220].  The sale to Lantern closed on July 13, 2018.  [D.I. 1247.]

## IV.   ARGUMENT

### A.   Summary Judgement Standard

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The party moving for summary judgment has the burden of showing the absence of genuine issues of material fact; once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine, material issue warranting trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d. Cir. 1989).  The moving party cannot sustain its burden by relying on an affidavit that is conclusory and lacks specific facts.  *Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus evidence whose foundation is deficient must be excluded from consideration."  *Williams*, 891 F.2d at 471 (Garth, J., concurring).

The party opposing the motion is entitled to all reasonable inferences from the evidence that could be drawn in its favor by the fact finder. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (holding that all reasonable inferences must be drawn in favor of the non-moving party). A disputed fact becomes one that is genuine, such that it prohibits summary judgment, "when reasonable minds could disagree on the result." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, summary judgment is precluded unless the evidence and the reasonable inference from that evidence could not support a verdict by the finder of fact in favor of the non-moving party. *See Hirsch v. Allen Products Co., Inc.*, 789 F.2d 230, 234 n. 2 (3d Cir. 1986).

In making its determination, the Court cannot weigh the credibility of the evidence and witnesses. *See Anderson*, 477 U.S. at 429. If credibility of evidence and witnesses must be determined then summary judgment is not appropriate as such issues must be decided at trial. *See Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995).

**B.    Lantern Fails to Meet Its Burden of Demonstrating that The Weinstein Company Ever Owned the Cohen Agreement Such that It Could Sell the Cohen Agreement to Lantern Pursuant to Section 363**

Lantern seeks a "declaratory judgment that [the Cohen Agreement] . . . was properly assigned to Lantern pursuant to Section 363 . . . ." Complaint, ¶ 1. In other words, Lantern seeks the Court's blessing that the Debtors transferred the Cohen Agreement to Lantern, without any obligation to cure defaults, which would have been required had the agreement been executory and assumed and assigned pursuant to Section 365.[3]

As Lantern acknowledges, the Debtors were never a party to the Cohen Agreement. The Cohen Agreement is between Cohen and ***SLP Films***, which is not one of the Debtors. As a

---

[3]   Lantern has not joined the Debtors in this action, despite that it seeks declaratory relief regarding an agreement purportedly owned and transferred to Lantern by the Debtors.

fundamental, threshold matter, the Debtors cannot transfer property that they do not own.  *In re Mariner Post-Acute Network*, 267 B.R. 46, 59 (Bankr. D. Del. 2001) ("[E]ven if the [bankruptcy court order] conveyed the [funds] to the [secured lenders], it did so only to the extent that they constituted property of the estate."); *id.* at 60 ("[T]he issue is not whether we could have determined, as between the Debtors and [an unsecured creditor], who owned the [funds]. . . . Rather, the issue is whether we could have (and did) transfer property in which the Debtors had no equitable interest to another. The answer to the latter is no."); *In re Custom Coals Laurel*, 258 B.R. 597, 604 n.13 (Bankr. W.D. Pa. 2001) ("Debtor could only convey to [assignee] what interest Debtor had."); 3 COLLIER ON BANKRUPTCY P 363.06 ("[T]he court may not authorize a sale free and clear of property that is not property of the estate.").  If the Debtors are not parties to the Cohen Agreement, then the Debtors could not have transferred or "sold" that agreement to Lantern.

To obtain the relief it seeks by the Motion, Lantern has the burden of showing that the proper foundation for the facts it alleges are not in dispute, that the Debtors acquired the Cohen Agreement, were a party to the Cohen Agreement, and were then able to "sell" the Cohen Agreement to Lantern.  Lantern has failed to establish that foundation or meet that burden.

While Lantern alleges that TWC eventually obtained the Cohen Agreement through a series of transactions involving SLP Films (a non-debtor) and another entity, SLPTWC Films, LLC (also a non-debtor), the evidence actually submitted by Lantern in support of that allegation – the Declaration of Irwin Reiter ("**Reiter Decl.**") – is wholly inadequate for purposes of obtaining summary judgment.

Mr. Reiter identifies himself as the "Executive Vice President for Accounting and Financial Reporting for Lantern Entertainment LLC," and states that he held the same position

within TWC prior to its bankruptcy filing.  Reiter Decl., ¶ 1.  Mr. Reiter also states that his

position involved "review[ing] talent participation reports such as the one sent to Bruce Cohen"

and "review[ing] The Weinstein Company's Finance Department's projections . . . ."  Reiter

Decl., ¶ 2.  Mr. Reiter does not identify himself as a custodian of records or an individual who is

familiar with chain of title issues at TWC, or as someone with personal knowledge about any of

the facts which he declares to be true.

Although Mr. Reiter acknowledges that the Cohen Agreement is between Cohen and SLP

Films, he states that his "understanding" is that

> upon SLP Films' final delivery of the Picture to SLPTWC Films, LLC ("SLP"),
> SLP assumed SLP Films' obligations under the Agreement. Upon SLP's
> subsequent dissolution, its sole member, The Weinstein Company LLC—a
> wholly-owned subsidiary of The Weinstein Company—assumed the rights to and
> performed the obligations under the Agreement. Such obligations include
> payment to Cohen for production services rendered under the Agreement—
> payments that were included in participation reports sent to Cohen that [Mr.
> Reiter] reviewed in [his] capacity as an Executive Vice President.

Reiter Decl., ¶4.

Because the statements in Mr. Reiter's declaration regarding the alleged transfer of the

Cohen Agreement to TWC are not made on personal knowledge, they cannot be used to support

Lantern's motion for summary judgment.  *See Maldonado*, 757 F.2d at 51 (a moving party

cannot sustain its burden by relying on an affidavit that is conclusory and lacks specific facts);

*Williams*, 891 F.2d at 471 ("Only evidence admissible at trial may be used to test a summary

judgment motion.  Thus evidence whose foundation is deficient must be excluded from

consideration.").

As evidence, Mr. Reiter's "understanding" is insufficient to meet Lantern's burden on a

motion for summary judgment demonstrating that TWC acquired the Cohen Agreement such that

it was able to sell it to Lantern under the Sale.  Mr. Reiter does not have personal knowledge

regarding the alleged series of transactions involving the Cohen Agreement.[4]    Summary

judgment should be denied on this basis alone.    *See* Fed. R. Civ. P. 56(c) ("An affidavit or

declaration used to support . . . a motion must be made on personal knowledge, set out facts that

would be admissible in evidence, and show that the affiant or declarant is competent to testify on

the matters stated."); *Mosley v. City of Pittsburgh Pub. Sch. Dist.*, Civil Action No. 07-1560,

2009 U.S. Dist. LEXIS 81174, at *3-4 (W.D. Pa. Sep. 8, 2009) ("[T]he Court finds that the

excerpts . . . of Plaintiff's revised affidavit are inadmissible speculation and should be stricken . .

. . The excerpted statements contain language such as, 'I believe,' 'from what I understand,' . . .

or similar language that demonstrate speculation or a lack of personal knowledge on Plaintiff's

part.    Statements in affidavits made only on belief or on information and belief may not be

considered in support of or in opposition to summary judgment."); *Javornick v. UPS*, Civil

Action No. 07-0195, 2008 U.S. Dist. LEXIS 75569, at *7-8 (W.D. Pa. Sep. 29, 2008) (striking

affidavits filed in connection with summary judgment motion that because "they are not based on

personal knowledge" and instead "based on [the affiants'] 'understanding' of the facts").

Accordingly, Lantern fails to meet its burden of showing that there is no genuine issue of

material fact, and that TWC "sold" the Cohen Agreement to Lantern.    The Motion must be

denied.

### C.    The Cohen Agreement Is Executory

Even if Lantern could demonstrate that TWC acquired the Cohen Agreement from SLP

Films, Lantern has failed to meet its burden of demonstrating that it "bought" the Cohen

Agreement from the Debtors pursuant to Section 363.    As this Court and the Third Circuit have

---

[4]  It is not surprising that Mr. Reiter would not have personal knowledge of these alleged facts, given that his position at TWC did not involve any legal affairs or render him the custodian of contracts and related documents.

made clear, and as Lantern has failed to address, an executory contract cannot be "sold" pursuant to Section 363 without being assumed and assigned pursuant to Section 365.  *See Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) ("[T]he sale of an executory contract triggers the protections afforded sales of bankruptcy estate property but also requires satisfaction of the requirements for assuming and/or assigning the same executory contract."); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 47 (D. Del. Bankr. 1999) ("A debtor cannot avoid the requirements of section 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.") (Walrath, J.).  Because, as explained below, the Cohen Agreement is executory and has not been assumed and assigned, Lantern cannot have acquired it pursuant to Section 363.

### 1.    The Cohen Agreement Expressly Contemplates the Remaining Possibility of a Material Breach Excusing Performance Following Release of the Picture

"The crucial issue for determining whether [a contract is] executory is whether the [parties] had material obligations that remain unperformed at the time the bankruptcy petition was filed.  *Gen. DataComm*, 407 F.3d at 623.  The Court "need not look beyond the [contract] itself to make [the] determination" of what constitutes a material breach.  *Id.*  Where the contract itself provides that the failure of one party to comply with certain covenants excuses the performance of the other party, the contract is executory and "[n]o further analysis is required." *Id.* n.12 ("It is [the contract], as we have stated, which defines the 'materiality' of the Appellees' obligations - it explicitly provides that the failure of an Eligible Executive to comply with the covenants of Paragraph 6 excuses the future performance of DataComm. . . . As such, the dissenting opinion's analysis, while perhaps thorough, substitutes its own views on materiality for what the parties explicitly and formally agreed to as being 'material' and vital to their contract."); *see also In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 278-79 (Bankr. S.D.N.Y. 2013) ("Here, the parties contractually agreed that the buyer's material breach of any term, **even**

**an immaterial term**, would allow Hawker to terminate the Aircraft Purchase Agreement . . . . In short, a buyer could commit a material breach of the Aircraft Purchase Agreement **even after delivery of the aircraft** that would allow Hawker to terminate the agreement and sue. Accordingly, the Aircraft Purchase Agreements are executory.") (emphasis added).

There is no dispute that the Cohen Agreement is executory as to SLP Films, because it includes an ongoing obligation by SLP Films, on one hand, to provide accountings and payment to Cohen, on the other hand.  As to Cohen, the Cohen Agreement is executory because it plainly[5] and expressly provides that Cohen's failure to comply with <u>any</u> provision of the Cohen Agreement – even after the Picture is produced – would excuse SLP Films' obligation to pay Cohen his contingent compensation.  Paragraph 3 of the Cohen Agreement provides:

> Contingent Compensation:  If the Picture is produced with Artist as the producer thereof and Lender and Artist fully perform all required services and obligations hereunder and in relation to the Picture, **and are not otherwise in breach or default hereof**, Artist shall be entitled to receive the following "Contingent Compensation":

Cohen Agreement, ¶ 3 (emphasis added).  In other words, SLP Films is obligated to pay Cohen his contingent compensation – after the Picture is produced – <u>only if</u> Cohen has not breached, is not breaching, and remains in compliance with the Cohen Agreement.[6]  As explained below, the Cohen Agreement imposes numerous ongoing obligations on the parties that survive the release of the Picture – *e.g.*, the right of first opportunity regarding a subsequent production of the Picture (*id.*, ¶ 13), the duty to refrain from seeking an injunction against the exploitation of the Picture (*id.*, ¶ 20), the duty to indemnify SLP Films in certain situations (*id.*, ¶ 15), continuing

---

[5]  Cohen agrees with Lantern that the Cohen Agreement is unambiguous.

[6]  A breach by Cohen similarly would excuse performance by SLP Films of other material obligations as well.  *See*, *e.g.*, Cohen Agreement, ¶ 4 ("Company shall accord Artist 'Produced by' credit in second position" provided that Cohen does not breach agreement); *id.*, ¶ 13 (Cohen has right of first opportunity provided that Cohen does not breach agreement).

warranties (*id.*, ¶ 14), the duty not to assign Cohen's right to examine TWC's book of account without its prior written consent (*id.*, Ex. DRCB, ¶ 3.5 A.), etc. The Cohen Agreement expressly provides that a breach of any of these provisions would excuse performance by SLP Films.

The Third Circuit's decision in *General DataComm* is instructive. In that case, the court considered whether a benefit plan between the debtor, DataComm, and various executives of the debtor was an executory contract. Paragraph 6 of the benefit plan required, among other things, that executives refrain from competing with the debtor, maintain confidentiality, refrain from instituting litigation, agree to participate in litigation initiated by the debtor, and refrain from negative publicity. The benefit plan further provided that, if any executive or his spouse directly or indirectly failed to comply with these covenants, then the board of directors of the debtor could terminate that executive's status under the benefit plan. *See General DataComm*, 407 F.3d at 623.

The Third Circuit analyzed the terms of the agreement and concluded that the benefit plan was executory. The court explained that it "need not look beyond the Benefit Plan itself to make [the] determination" of what constitutes a material breach under the benefit plan. The court further explained that, under paragraph 6 of the benefit plan, "if an Eligible Executive breached one of those provisions, it would excuse the future performance by DataComm" and that "[b]y contractual definition, therefore, such obligations are material." *Id.* at 623-24. In response to the concurring opinion of one of the judges on the panel – who analyzed the materiality of the obligations in great detail and concluded that the benefit plan was not executory because the obligations were not material – the court stated:

> Our dissenting colleague has discussed the issue of "materiality" at length, but he has made no reference to the very terms of the Benefit Plan itself. **It is that Plan, as we have stated, which defines the "materiality" of the Appellees' obligations - it explicitly provides that the failure of an Eligible Executive to**

**comply with the covenants of Paragraph 6 excuses the future performance of DataComm.** We are satisfied that the parties intended the provisions of Paragraph 6 to be material. No further analysis is therefore required. As such, the dissenting opinion's analysis, while perhaps thorough, substitutes its own views on materiality for what **the parties explicitly and formally agreed to as being "material" and vital to their contract**.

*Id.* at 623 n.12 (emphasis added).

Similarly, in *Hawker Beechcraft*, the court considered whether an aircraft purchase agreement was an executory contract. The debtor, Hawker, was engaged in the manufacture, sale and servicing of various aircraft. When Hawker sold a new jet, the purchase agreement included a limited warranty that covered defects in materials and workmanship and required that the customer maintain the aircraft in certain manners, not remove certain identifying marks and serial numbers from the aircraft, and not use the aircraft for unspecified purposes. *Hawker*, 486 B.R. at 269-70. The purchase agreement also obligated the buyer/customer to indemnify Hawker for various claims, to comply with various regulations applying to the aircraft, and not to assign the buyer/customer's rights under the purchase agreement without Hawker's written consent. *Id.* at 270. The purchase agreement further provided that, if the buyer/customer breached any term or condition contained in the agreement in any material respect, Hawker would have the right to terminate the agreement. *Id.*

The court in *Hawker Beechcraft* held that the aircraft purchase agreement was an executory contract, material breach of which was possible even after the sale of an aircraft. *Id.* at 278. The court explained that, where "the parties contractually agree that some or all of the terms are sufficiently important to discharge any further obligations imposed on the party aggrieved by a breach, their intent will govern." *Id.* (citing *Gen. DataComm*, 407 F.3d at 623-24). The court further explained that the aircraft purchase agreement reflected the parties' agreement that "the buyer's material breach of any term, **even an immaterial term**, would allow

Hawker to terminate the Aircraft Purchase Agreement and sue for specific performance." *Id.* (emphasis added). As such, the court concluded that the agreement is executory because "a buyer could commit a material breach of the Aircraft Purchase Agreement even after delivery of the aircraft that would allow Hawker to terminate the agreement and sue." *Id.* at 279.

Like the benefit plan in *General DataComm* and the aircraft purchase agreement in *Hawker*, the Cohen Agreement contains an express and unambiguous agreement that <u>any</u> breach by Cohen of <u>any</u> of his obligations under the Cohen Agreement – including after the Picture is produced (and released) – would excuse performance by SLP Films. This alone reflects the parties' intent to make all of the provisions of the Cohen Agreement material and therefore renders the Cohen Agreement executory. "No further analysis is therefore required." *Gen. DataComm*, 407 F.3d at 623 n.12.

## 2. *In re Exide Technologies* and the Doctrine of Substantial Performance Are Inapplicable

Lantern apparently rests its claim for relief on the "substantial performance" doctrine, and the premise underlying Lantern's argument that the Cohen Agreement is not executory is that the parties to the Cohen Agreement have, as a matter of fact, substantially performed their legal obligations and that "substantial performance" of a contract precludes the possibility of a material breach. To say nothing of the inherently factual premise upon which it rests – a premise that has never been established in any discovery conducted in this adversary proceeding and that Lantern purports to establish without any admissible evidence – the "substantial performance" doctrine, as discussed by the Third Circuit in *In re Exide Technologies*, 607 F.3d 957 (3d Cir. 2010), is inapplicable to the Cohen Agreement.

Under New York law (which governs the Cohen Agreement), the doctrine of substantial performance does not apply where the parties have made it clear by the terms of their contract

that a breach of any term of the contract by one party would excuse performance by the other party. *Avant Guard Props., LLC v New York City Indus. Dev. Agency*, 2015 N.Y. Misc. LEXIS 4028, at *15 (N.Y. Sup. Ct. Jan. 7, 2015) ("**The substantial performance rule does not apply here, where the parties have made it clear by the terms of the Lease that only complete performance will satisfy the agreement**.") (emphasis added); *Women's Interart Ctr., Inc. v. New York City Economic Dev. Corp.*, 2014 N.Y. Misc. LEXIS 2266, at *81-83 (N.Y. Sup. Ct. Apr. 28, 2014) (substantial performance doctrine has no application where parties' agreement unambiguously reflects agreement that any breach would excuse performance and permit termination); *see also Hawker*, 486 B.R. at 278 ("[I]f the parties contractually agree that some or all of the terms are sufficiently important to discharge any further obligations imposed on the party aggrieved by a breach, their intent will govern. . . . The doctrine of substantial performance does not apply where the parties, by the terms of their agreement, make it clear that only complete performance will be satisfactory. . . . Here, the parties contractually agreed that the buyer's material breach of any term, even an immaterial term, would allow Hawker to terminate the Aircraft Purchase Agreement . . . .") (internal citations and quotations omitted).

The substantial performance rule does not apply here – and cannot preclude the possibility of a material breach – because the Cohen Agreement makes clear that "only complete performance [by Cohen] will satisfy the agreement." *Avant Guard Props.*, 2015 N.Y. Misc. LEXIS 4028, at *14. As explained above, the Cohen Agreement clearly and unambiguously states that "Artist [*i.e.* Cohen] shall be entitled to receive . . . 'Contingent Compensation'" only if Cohen is "not otherwise in breach or default" of the Cohen Agreement. Importantly, as discussed *infra*, the Cohen Agreement also provides Cohen a right of first opportunity to produce a subsequent production of the Picture "provided that neither [Cohen nor his production entity] is

20

in uncured material breach or default" of the Cohen Agreement.[7]  The Cohen Agreement evinces a clear intent that only complete performance by Cohen will suffice.  This intent controls and precludes any hypothetical application of the doctrine of substantial performance.  *See* 23 Williston on Contracts § 63:3 (4th ed.) ("Where the contract itself is clear in making a certain event a material breach of that contract, a court must ordinarily respect that contractual provision.").  Accordingly, the *Exide* analysis of the executoriness of a contract – based on the question of whether one of the parties has substantially performed and may no longer materially breach the contract – is inapposite and inapplicable.[8]

---

[7]  By contrast, the Cohen Agreement makes clear that various potential breaches by SLP Films would be "harmless" and would not excuse Cohen's performance under the Cohen Agreement. *See, e.g.*, Cohen Agreement, ¶ 6 ("Company shall retain all approvals and controls, including, without limitation, with respect to the producer and the right to designate the production manager, estimator and location auditor, and the right to initiate action at any time and in any respect in connection with the Picture. . . . **No casual or inadvertent breach of this paragraph shall be deemed a breach of this Agreement**) (emphasis added); *id.*, ¶ 21 ("At Company's request, Lender shall cause Artist to execute any and all additional documents and instruments (not inconsistent with the terms hereof) reasonably deemed by Company to be necessary to effectuate the purposes of this Agreement; provided that Artist shall have a reasonable opportunity to review and negotiate in good faith any such documents. Company shall promptly furnish a copy of any such executed documents to Artist, **provided that no casual or inadvertent failure to do so shall be a breach hereof** . . . .") (emphasis added).

[8]  For the same reasons, Lantern's reliance on *In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991), *In re Stein & Day Inc.*, 81 B.R. 263 (Bankr. S.D.N.Y. 1988), and *In re Learning Publications, Inc.*, 94 B.R. 763 (Bankr. M.D. Fla. 1988), is beside the point.  While Lantern argues that those cases stand for the proposition that "work-for-hire contracts [are] nonexecutory due primarily to the completion of the works prior to the petition date" (Motion, ¶ 29), Lantern greatly overstates the probative value of those opinions.  The question of executoriness and, in turn, materiality, is inherently fact-specific and requires an analysis of the agreement in question under state law.  *Gen. DataComm*, 407 F.3d at 623.  Yet none of agreements in *Qintex*, *Stein & Day*, or *Learning Publications* appears to include a provision similar to that found in the Cohen Agreement, which makes clear that one of the parties' (the studio) performance is excused in the event of a breach of any term by the artist.  Nor is there any discussion in *Stein & Day* or *Learning Publications* of New York law.  As such, the cases are inapposite and do not provide much, if any, guidance on the executoriness of the Cohen Agreement.  *See Hawker*, 486 B.R. at 277 ("Certain of the objectors imply that warranty obligations are not or cannot be executory . . . . So sweeping a statement cannot be right because the question of executoriness depends on the terms of the agreement containing the warranty or support obligations. Thus, without commenting on the correctness of the objectors' authorities, they are inapposite and do not provide guidance in deciding the issues . . . .").  Lantern's citation to the plan proposed in the *Relativity* bankruptcy cases (Motion, ¶ 34 and note 6 therein) is irrelevant, not precedential, or even instructive.

### 3.    The Rights of First Refusal and Opportunity Render the Cohen Agreement Executory

The Cohen Agreement is executory because it provides Cohen a right of first refusal to provide producing services in connection with subsequent productions relating to the Picture. Cohen Agreement, ¶ 13.  The Cohen Agreement also is executory because it provides a separate right of first refusal to TWC "with respect to any proposed assignment of [Cohen's] right to receive Contingent Bonus hereunder upon equivalent terms (to the extent economically matchable) offered to [Cohen] by a bona fide third party."  *Id.*, Exhibit CB, ¶ 3.5 B.  The existence of these provisions in the Cohen Agreement is an independent basis for this Court to conclude that the agreement is executory.

In seeking summary judgment, Lantern ignores important precedent from this Court regarding rights of first refusal and the effect of such rights on the executoriness of a contract. This Court has repeatedly held that contracts containing rights of first refusal are executory.  *CB Holding Corp.*, 448 B.R. at 689 (agreeing with "the majority of courts which have held that a right of first refusal is an executory contract subject to rejection under section 365"); *Kellstrom Indus.*, 286 B.R. at 835 ("A review of the right of first refusal in this case confirms the executory nature of the contract.  The Debtors are obligated to give notice to Sawgrass of any offer to purchase the price and to sell to it if it matches the offer.  Sawgrass is required to exercise or waive the right of first refusal within thirty days of the notice.  Therefore, we conclude, like the majority of the courts before us, that the right of first refusal granted to Sawgrass is an executory contract . . . .").

Like the rights of first refusal in *CB Holding* and *Kellstrom*, the right of first opportunity given to Cohen under the Cohen Agreement also renders that contract executory.  Paragraph 13 of the Cohen Agreement provides that, for a period of seven years after the release of the Picture

(*i.e.*, until November of 2019), Cohen will have the right of first opportunity to produce a sequel, prequel, or other production based on the Picture. In that instance, Cohen is given 30 business days "following Company's notice to [Cohen] of the commencement of negotiations for [Cohen's] services" to reach an agreement on the terms of such subsequent production, provided that "the financial terms and conditions for the engagement of [Cohen] shall be no less favorable than those set forth in [the Cohen] Agreement." Cohen Agreement, ¶ 13. If no agreement is reached between the parties within that 30-business-day deadline, "then Company shall have the right to engage alternative producers and shall have no further obligation" to Cohen with respect to such subsequent production. *Id.*

Here, SLP Films also has a separate right of first refusal which, if the contract were properly assumed and assigned, would inure to the benefit of the assignee. Paragraph 3.5 of Exhibit CB to the Cohen Agreement (which provides the terms of Cohen's contingent compensation) provides the terms of Cohen's ability to sell or assign his right to receive contingent compensation. Subparagraph B of paragraph 3.5 provides TWC with a right of first refusal in the event of a proposed assignment by Cohen:

> TWC shall have the right of first refusal with respect to any proposed assignment of [Cohen's] right to receive Contingent Bonus hereunder upon equivalent terms (to the extent economically matchable) offered to [Cohen] by a bona fide third party. [Cohen] shall notify TWC of the terms of any such proposed assignment and TWC shall have 7 business days within which to elect to accept such terms. [Cohen] shall make no change in such terms which are adverse to [Cohen's] interest without giving TWC the opportunity to accept such changed terms. If TWC does not elect to accept such terms, then [Cohen] shall be free to accept the proposed terms of assignment from such bona fide third party . . . .

Cohen Agreement, Ex. CB, ¶ 3.5 B.

Under this Court's holdings in *CB Holding* and *Kellstrom*, the rights of first refusal of Cohen *and* SLP Films reflected in the Cohen Agreement clearly render that agreement executory. *See CB Holding*, 448 B.R. at 689 ("A review of the Lease provision in this case

confirms its executory nature.  The Debtors are obligated to give written notice to the Landlord of any intent to sell the Liquor License separate from the Lease and to offer to sell the Liquor License to the Landlord for $100,000.  The Landlord, for its part, is required to accept the offer within thirty days of the notice.  Therefore, we conclude, like the majority of the courts before us, that the Lease provision at issue is executory and could be rejected by the Debtors under section 365.");  *Kellstrom*, 286 B.R. at 835 (same); *see also In re Abitibibowater Inc.*, 418 B.R. 815, 830-31 (Bankr. D. Del. 2009) (concluding that agreement containing option to purchase shares at a set price is executory).

Lantern ignores this Court's decisions in *CB Holding* and *Kellstrom* (which Cohen briefed in his objection to the "statement" filed by the Debtors in June 2018), even though Lantern addresses other arguments made by Cohen in his objection to the Debtors' "statement." *See* Motion, ¶ 37.  In any event, the Court should reject Lantern's argument that Cohen's right of first opportunity relating to subsequent productions does not render the Cohen Agreement executory for the following reasons:

First, there is no merit to Lantern's suggestion that the right of first opportunity constitutes a series of "mere conditions, not legal duties that the Debtors have any obligation to perform." Motion, ¶ 39 n.7.  While it is true that the obligations associated with the right of first opportunity are contingent on certain events – *i.e.*, the studio decides to create a subsequent production of the Picture, Cohen is available to produce, etc. – that does not transform the parties' unperformed and contingent obligations in connection with the right of first opportunity into conditions.  A contingent obligation is not the same thing as a condition. *Abitibibowater*, 418 B.R. at 830 n.11.  A contingent obligation, such as that associated with an option agreement or the right of first refusal, is not a condition merely because it is contingent. *Id.* at 830-31 ("The

Debtors argue that the fact that certain obligations may be contingent does not prevent the Call Agreement from being executory. . . . Numerous other courts have determined that contingent option agreements are executory when material obligations will arise on each side if the option is exercised. . . . The Call Agreement contains layers of material obligations by both ACSC and Woodbridge that change depending on the particular contingency that occurs.") (citing *Kellstrom*, 286 B.R. at 835)); *In re A.J. Lane & Co.*, 107 B.R. 435, 437 (Bankr. D. Mass. 1989) ("The contingency of the option exercise does not make the agreement non-executory.").

Second, Lantern's reliance on *Stein & Day* is misplaced. *See* Motion, ¶ 40. In that case, the agreement between an author and the debtor (a publisher) provided the debtor an option to publish the author's next book "on terms to be arranged." 81 B.R. at 266. The agreement gave the debtor six weeks to notify the author whether it desires to publish a subsequent book, but did not obligate the author to do anything. *Id.* at 266-67 ("The author is not committed to the publisher and may agree to have his next book published by another publisher on more favorable terms than offered by the debtor."). The right of first opportunity in the Cohen Agreement is different from the "right of first notice" described in *Stein & Day*. Unlike the right of first notice in *Stein & Day*, the right of first opportunity in the Cohen Agreement establishes a "floor" for the financial terms of a subsequent production agreement – *i.e.*, it provides that the financial terms "shall be no less favorable than those set forth in this Agreement." Additionally, unlike the debtor in *Stein & Day*, Cohen actually "shall have the first opportunity to render producing services in connection with such Subsequent Production . . . ." In other words, SLP Films actually is obligated to hire Cohen as the producer of a subsequent production (if he is interested) on terms no less favorable than those in the Cohen Agreement, not merely to notify him of SLP Films' intent to make another film. Accordingly, *Stein & Day* is inapposite.

25

<u>Third</u>, there is no merit to Lantern's argument that the right of first opportunity in the Cohen Agreement is uncertain or fails to satisfy the statute of frauds.  Motion, ¶ 41, n.8.  New York courts do not apply the definiteness doctrine rigidly and striking down a contract as indefinite and in essence meaningless is at best a last resort.  *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 575 N.E.2d 104, 105-06 (N.Y. 1991) (internal citations and quotations omitted).  "Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear."  *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989).

Here, the right of first opportunity is sufficiently definite and enforceable.  The Cohen Agreement specifically provides that "the financial terms and conditions for the engagement of Artist shall be no less favorable than those set forth in this Agreement," which is sufficiently definite because it requires no more than a simple review of the Cohen Agreement itself.  *See CR Best Rd., LLC v Camps Mogen Avraham, Heller, Sternberg, Inc.*, 960 N.Y.S.2d 545, 548 (N.Y. App. Div. 2013) (right of first refusal did not violate statute of frauds where "[t]he price was also adequately set forth as 'the same terms and conditions as in the third party offer'").  Additionally, because the Cohen Agreement references "terms to be negotiated in good faith within the Company's **usual parameters for comparable engagements**" (Cohen Agreement, ¶ 13 (emphasis added)), the right of first opportunity is sufficiently definite because it provides an objective method for determining terms – namely, by reference to TWC's own commercial practice.  *See Cobble Hill Nursing Home*, 548 N.E.2d at 206 ("Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a

method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage.").

Accordingly, the Court should – consistent with its prior decisions in *Kellstrom* and *CB Holding* – conclude that the rights of first opportunity and first refusal in the Cohen Agreement render it executory as a matter of law.

### 4.     The Remaining Ongoing Obligations Reflected in the Cohen Agreement Are Material

As explained in Section IV.C.1 *supra*, Cohen respectfully submits that the Court should deny the Motion because the Cohen Agreement is executory in that it expressly provides that any breach of any provision – no matter how immaterial – would excuse performance by SLP Films. *See Gen. DataComm*, 407 F.3d at 623.  In addition to this independent basis for the executoriness of the Cohen Agreement, a review of various obligations that survive the making and release of the Picture confirms the executory nature of the Cohen Agreement.

Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties.  *Frank Felix Assocs. v. Austin Drugs*, 111 F.3d 284, 289 (2d Cir. 1997). A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract.  *See Babylon Assocs. v. County of Suffolk*, 475 N.Y.S.2d 869, 874 (N.Y. App. Div. 1984).  "The question may be posed:  Would the innocent party have agreed to enter the contract without the inclusion of the disputed clause?"  *Lipsky*, 551 F.2d at 895.

Contrary to Lantern's simplistic and unsupported view of the Cohen Agreement, the purpose of the transaction was not solely to make the Picture, but also to enable the studio to market, distribute, and generally exploit the Picture after it was made.  *See*, *e.g.*, Cohen Agreement, ¶  9 ("Lender and Artist hereby grant to Company the right to issue and authorize

publicity concerning Artist, and to use Artist's name, voice, approved likeness and approved biographical data in connection with the distribution, exhibition, advertising and exploitation of the Picture"); *id.*, ¶ 20 ("In no event shall Lender or Artist be entitled by reason of any such breach to terminate this Agreement or to enjoin or restrain the exhibition, distribution, advertising, exploitation, or marketing of the Picture and/or any rights therein."); *id.*, Ex. A (Certificate of Engagement) ("The Rights shall include without limitation all . . . ownership and exploitation rights in the Material now or hereafter recognized in any and all territories and jurisdictions including, by way of illustration, production, reproduction, distribution, adaptation, performance, fixation, rental and lending rights, exhibition, broadcast and all other rights of communication to the public, and the right to exploit the Material throughout the universe in perpetuity in all media . . . ."); *id.*, Ex. CB, ¶ 3.3.A. ("As between TWC and Participant, TWC shall have exclusive and perpetual control of the distribution, marketing, advertising, publicizing, exploitation, sale or other disposition of the Picture").  This makes sense, because Cohen's contingent compensation is tied directly to the ability of SLP Films/TWC to successfully distribute the Picture, and a film that cannot be exploited or distributed has little or no value to a film studio.

The Cohen Agreement contains at least one provision that is clearly material to the ability of SLP Films/TWC to distribute and exploit the Picture following its production.  Specifically, the Cohen Agreement contains a continuing obligation by Cohen to refrain from seeking to "enjoin or restrain the exhibition, distribution, advertising, exploitation, or marketing of the Picture and/or any rights therein."  Cohen Agreement, ¶ 20.  This is a material term that goes to the root of the agreement between the parties – namely, SLP Films' ability to exploit and distribute the Picture without the threat of an injunction if SLP Films fails to pay Cohen as

provided in the agreement.

*In re WorldCom, Inc.*, 343 B.R. 486 (Bankr. S.D.N.Y. 2006) is instructive. In *WorldCom*, the court analyzed the executoriness of a settlement agreement between the debtor and Dobie Properties, an entity that asserted competing claims relating to a real property owned by the debtor. After the Florida Department of Transportation filed an eminent domain action regarding the property, the debtor and Dobie entered into their settlement agreement, which was approved in a judgment entered in a separate quiet title state court action between the debtor and Dobie. The agreement provided that debtor would use its best efforts to maximize recovery in the eminent domain action, that the debtor and Dobie would share in the proceeds of the condemnation of the real property, and that Dobie would refrain from challenging the state court judgment approving the settlement agreement. 343 B.R. at 488-89. Concluding that the settlement agreement was executory, the court explained:

> The Court finds the requirement that Dobie refrain from taking steps to vacate the State Court Consent Judgment is a material term of the Amended Settlement Agreement, violation of which would constitute a material breach on the part of Dobie. . . . The waiver of Dobie's right to vacate the State Court Consent Judgment and subsequently challenge the State Action clearly goes to the heart of the settlement of the State Action, and is therefore a material outstanding obligation under the Amended Settlement Agreement.

*Id.* at 494.

The court further explained that "the obligation of Dobie to refrain from filing a motion to vacate the State Court Consent Judgment goes directly to the ability of the Debtors to perform their own obligations under the Amended Settlement Agreement" and that "[c]learly, performance is due on the part of the Debtors that would be directly impeded by Dobie's failure to refrain from certain acts that, if taken, would be deemed to be a material breach of the Amended Settlement Agreement." *Id.* at 497-98

Here, as in *WorldCom*, Cohen's continuing obligation to refrain from seeking to "enjoin

29

or restrain the exhibition, distribution, advertising, exploitation, or marketing of the Picture" (Cohen Agreement, ¶ 20) clearly goes to the heart of the Cohen Agreement. Without this obligation, SLP Films/TWC would be unable to distribute and exploit the Picture, to recoup its expenses and maximize profits, and to pay Cohen his contingent compensation. Additionally, as in *WorldCom*, "performance is due on the part of [SLP Films/TWC] that would be directly impeded by [Cohen's] failure to refrain from certain acts that, if taken, would be deemed to be a material breach of" the Cohen Agreement. *Id.* at 498. An inability by SLP Films/TWC to distribute and exploit the Picture would "defeat the purpose of the entire transaction," and no studio would ever make a film without an agreement by the artists contributing to the film to refrain from seeking to enjoin or restrain the studio's exploitation of the film. *See Lipsky*, 551 F.2d at 895 ("A 'material' breach has been defined as . . . a breach which is so substantial as to defeat the purpose of the entire transaction. The question may be posed: Would the innocent party have agreed to enter the contract without the inclusion of the disputed clause?") (citation omitted).[9] Accordingly, Cohen's ongoing obligation to refrain from seeking to enjoin or restrain the exploitation of the Picture is material and independently renders the Cohen Agreement executory.

The Cohen Agreement contains other continuing material obligations that render it executory. While the Picture was completed in 2012, the Cohen Agreement includes certain ongoing rights and obligations of the parties – relating primarily to the exploitation and distribution of the film – that were of material importance to the parties at the time that they entered into the Cohen Agreement. For example, the Certificate of Engagement in the Cohen Agreement provides that Cohen "warrant[s] that . . . the Material is or will be original with Artist

---

[9] Counsel for Cohen has reviewed over a dozen "talent" contracts drafted by TWC, all of which contain this provision. [*See*, *e.g.*, D.I. 1048-1, p. 14, ¶ 20.]

or is in the public domain throughout the world . . . and, to the best of [Cohen's] knowledge (in the exercise of reasonable prudence) does not and will not infringe upon or violate any copyright of, or infringe upon or violate the right of privacy or any other right of any person." Additionally, the Certificate of Engagement provides that Cohen "agree[s] to hold Company and its successors, licensees and assigns harmless from and against all damages, losses, costs, and expenses (including reasonable outside attorneys' fees and costs) which Company or any of its successors, licensees or assigns may suffer or incur by reason of the breach of any of the warranties made in this paragraph."  Similarly, the Certificate of Engagement provides that "Company shall defend, indemnify and hold harmless [Cohen] from and against any and all liability, [etc.] . . . in connection with any third party claim or action . . . respecting material supplied to [Cohen] by Company . . . ."  And while Company has the right to select legal counsel of its choice, and may compromise any claim or legal action, Cohen retained the right to approve any compromise or settlement which involves an admission of liability on his part, provided that Cohen furnishes Company with a surety bond or irrevocable letter of credit for reasonably anticipated liability related to such claim or litigation.[10]

Additionally, the Cohen Agreement provides that "Company contemplates filming and exploiting films, including, without limitation, 'behind the scenes' or 'making of' productions, (jointly and severally 'Promotional Rights') about the production of the Picture produced

---

[10]    Lantern cites *Exide* for the proposition that "[b]ecause a breach of the warranties and indemnification clauses by either party would not 'defeat the purpose of the entire transaction'—which was, of course, the production of the Picture—these terms are not material" (Motion, ¶ 38).  *Exide* does not support Lantern's argument.  While the court in *Exide* concluded that the indemnification and warranty obligations in that case did not rise to the requisite level of materiality, the court based its decision on the fact that the representations and warranties had expired years prior to the debtor's bankruptcy filing and were no longer relevant.  *Exide*, 607 F.3d at 964.  Unlike the obligations in *Exide*, the representations and warranties and indemnification obligations in the Cohen Agreement are not limited in time and do not expire.

hereunder" and further provides that Cohen shall have the right to provide or withhold his approval of such productions.    Cohen Agreement, ¶ 8.    The Cohen Agreement clearly contemplates future productions relating to the Picture and imposes future and ongoing obligations on Cohen to cooperate in the approval process relating to such future productions.[11]

Accordingly, the Cohen Agreement imposes multiple material obligations on Cohen that survive the making and release of the Picture and render the Cohen Agreement executory.

### D.    Even if Lantern Obtained the Cohen Agreement from TWC Pursuant to Section 363, Lantern Is Subject to the Obligations in the Cohen Agreement

Even if TWC acquired the Cohen Agreement from SLP Films, and even if the Cohen Agreement is not executory and could have been "sold" to Lantern pursuant to Section 363, Lantern remains subject to the ongoing obligations in that agreement.    "Bankruptcy law generally does not permit a debtor or an estate to assume the benefits of a contract and reject the unfavorable aspects of the same contract.    Yet, allowing the Debtors to recharacterize their contract rights as accounts receivable and sell them free and clear of the corresponding obligations yields that very result."  *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 264 (3d Cir. 2000) (internal citation omitted); *see also DB Structured Prods. v. Am. Home Mortg. Holdings, Inc. (In re Am. Home Mortg. Holdings, Inc.)*, 402 B.R. 87, 98 (Bankr. D. Del. 2009) ("As is evident from *Folger Adam*, the *cum onere* principle applies equally to the transfer of rights and obligations under a non-executory contract pursuant to § 363 of the Bankruptcy Code as to the assumption and assignment of contracts and leases pursuant to §

---

[11]  Although Lantern argues that this provision is "certainly not material, if even relevant at this point" because "[t]he vast majority (if not all) of the use of Cohen's likeness and approval thereof in connection with promotional material has long passed" (Motion, ¶ 42), Lantern provides absolutely no evidence in support of this conclusory assertion.  Accordingly, Lantern fails to meet its burden as a party moving for summary judgment.  *See* Fed. R. Civ. P. 56(c); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (holding that if a party moving for summary judgment offers only speculation and conclusory allegations, its burden is not met).

365.").

    As the above authorities make clear, Lantern cannot "cherry-pick" the benefits under the Cohen Agreement while rejecting the ongoing (*i.e.*, post-Sale) obligations under the Cohen Agreement.  Allowing Lantern to do so would run afoul of the *cum onere* principle and provide Lantern with an unnecessary and inequitable windfall.[12]    Accordingly, even if the Court concludes that the Cohen Agreement is not executory, it should reject Lantern's suggestion that it somehow acquired the Cohen Agreement under Section 363 without the need to perform any of the future obligations under that agreement.

    Lantern's post-Sale Order revelation of its position – that it "purchased" the Cohen Agreement free and clear of all future obligations under that agreement – is particularly egregious given that (1) neither the Sale Motion nor any of the cure notices disclosed that Lantern is purporting to "purchase" numerous contracts free and clear of all obligations, despite that the same contracts were listed in multiple cure notices as potentially executory contracts that the Debtors potentially will assume and assign to Lantern; and (2) the Debtors confirmed to counsel for Cohen that, regardless of whether a particular contract is assumed and assigned to Lantern, "obligations arising from the operation of the business post-closing (i.e., back end rights) would be obligations of [Lantern]."  [D.I. 1045-2, Ex. 1.]

    Accordingly, regardless of whether or not the Cohen Agreement is executory, Lantern is obligated under the APA and the Sale Order to pay Cohen the post-Closing amounts due to him under the Cohen Agreement.

    **E.    This Adversary Proceeding Is Precluded by the Sale Order**

    Although Cohen submits that the Court can grant summary judgment in his favor and

---

[12]  Lantern has not explained how, if at all, the APA or the Sale Order change this result.  Cohen reserves the right to respond in the event that Lantern belatedly briefs this issue in a reply.

determine that Lantern could not have acquired the Cohen Agreement without complying with the assumption and assignment procedure, the Court need not make that determination. Indeed, the relief sought by Lantern in this adversary proceeding – *i.e.*, a determination that the Cohen Agreement is not executory, and that therefore Lantern acquired the Cohen Agreement through the sale pursuant to Section 363 – is precluded by the Sale Order under the law of the case doctrine. The Sale Order already provides for the assumption and assignment of the executory contracts listed on the Debtors' Final Contract List, which included the Cohen Agreement.

In fact, the Sale Order provides that **"[e]ach Assumed Contract and Lease constitutes an executory contract** or unexpired lease under Bankruptcy Code section 365, and all requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to [Lantern] of the Assumed Contracts and Leases have been, or will be, satisfied. . . ." Sale Order, ¶ 35 (emphasis added). The Sale Order identifies the "Assumed Contracts and Leases" as those contracts and leases which will be "identified on a notice that the Debtors will file with the Court within (1) Business Day after entry of [the] Order . . ." *Id.*, ¶ 29.

The Final Contract List, which was filed in accordance with paragraph 29 of the Sale Order, identifies the numerous "Assumed Contracts and Leases" which paragraph 35 of the Sale Order already has determined unequivocally "constitute[]. . . executory contract[s] or unexpired lease[s] under Bankruptcy Code section 365 . . . ." One such "Assumed Contract and Lease" identified in the Sale Order is the Cohen Agreement. Accordingly, pursuant to the plain language of the Sale Order, the Cohen Agreement "constitutes an executory contract." The Sale Order's determination constitutes the law of the case, which bars Lantern from re-litigating the executoriness issue. *HLI Creditor Trust v. Export Corp. (In re Hayes Lemmerz Int'l, Inc.)*, 313 B.R. 189, 193 n.5 (Bankr. D. Del. 2004) ("The law of the case doctrine states that 'once an issue

34

has been decided, parties may not relitigate that issue in the same case.'") (quoting *Ogbudimkpa*

*v. Ashcroft*, 342 F.3d 207, 210 n.7 (3d Cir. 2003)).  Lantern's eleventh-hour attempt to obtain a

contrary determination is barred by the Sale Order.

## V.    CONCLUSION

Lantern seeks summary judgment – the result of which would deprive Cohen of valuable

contracts rights for which he bargained – based on a single inadmissible declaration and a series

of conclusory arguments.  Not only does Lantern fail to meet its evidentiary burden as a party

moving for summary judgment, but the evidence it has submitted (*i.e.*, the Cohen Agreement)

actually demonstrates that Lantern's arguments are meritless and that the Cohen Agreement is

executory under established precedent of the Third Circuit and this Court.  Accordingly, and for

all of the foregoing reasons, Cohen respectfully requests that the Court deny the Motion and

grant Cohen such other further relief as may be just.[13]

Dated: November 1, 2018                CROSS & SIMON, LLC

                                       */s/ Christopher P. Simon*
                                       Christopher P. Simon (No. 3697)
                                       1105 North Market Street, Suite 901
                                       Wilmington, DE 19801
                                       Telephone: (302) 777-4200
                                       csimon@crosslaw.com

                                       - and -

                                       LANDAU GOTTFRIED & BERGER LLP
                                       Michael I. Gottfried
                                       Roye Zur
                                       1801 Century Park East, Suite 700
                                       Los Angeles, CA 90067
                                       mgottfried@lgbfirm.com
                                       rzur@lgbfirm.com
                                       *Attorneys for Defendants Bruce Cohen Productions*
                                       *and Bruce Cohen*

---

[13]  This answering brief solely constitutes Cohen's opposition to Lantern's Motion.  It does not
constitute, and should not be construed as, Cohen's responsive pleading to the Complaint.