## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------------x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
The Weinstein Company Holdings LLC, et al.,                   :    Case No. 18-10601 (MFW)
                                                              :
                Debtors.¹                                     :    (Jointly Administered)
                                                              :
                                                              :
--------------------------------------------------------------x
                                                              :
Lantern Entertainment LLC,                                    :
                                                              :    Adv. Pro. No. 18-50924 (MFW)
                Plaintiff,                                    :
                                                              :
vs.                                                           :
                                                              :
Bruce Cohen Productions, and Bruce Cohen,                     :
                                                              :
                Defendants.                                   :
--------------------------------------------------------------x
```

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT TO DETERMINE THE NONEXECUTORY NATURE OF A CONTRACT

Michael S. Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Joseph L. Sorkin (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

David B. Stratton (No. 960)
Evelyn J. Meltzer (No. 4581)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801
Telephone: (302) 777-6500
Facsimile: (302) 421-8390
*Attorneys for Lantern Entertainment LLC*

---

[1] The last four digits of The Weinstein Company Holdings LLC's federal tax identification number are (3837). The mailing address for The Weinstein Company Holdings LLC is 99 Hudson Street, 4th Floor, New York, New York 10013. Due to the large number of Debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at http://dm.epiq11.com/twc.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

    I.      THE AGREEMENT IS NOT EXECUTORY ............................................... 2

        A.    The Parties Have Substantially Performed ........................................ 2

        B.    Any Remaining Obligations Under the Contract Are Immaterial ...................... 7

            a.    The rights of first refusal and opportunity provisions do not render the Agreement executory ................................................................ 7

            b.    None of the other remaining obligations are material ............................ 10

    II.     THE DEBTORS TRANSFERRED ANY AND ALL RIGHTS OR ASSETS TO LANTERN PURSUANT TO THE APA ...................................................... 12

    III.    NONE OF COHEN'S REMAINING ARGUMENTS DEFEAT LANTERN'S MOTION ................................................................................................. 14

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re A.J. Lane & Co.*,
107 B.R. 435 (Bankr. D. Mass. 1989) ........................................................8

*In re Abitibibowater Inc.*,
418 B.R. 815 (Bankr. D. Del. 2009) ..........................................................8

*In re AMR Corp.*,
562 B.R. 20 (Bankr. S.D.N.Y. 2016) ......................................................3, 4

*In re ANC Rental Corp.*,
277 B.R. 226 (Bankr. D. Del. 2002) ........................................................12

*Avant Guard Props., LLC v. N.Y.C. Indus. Dev. Agency*,
No. 115209/10, 2015 WL 7070066 (N.Y. Sup. Ct. Jan. 7, 2015) .............6

*In re CB Holding Corp.*,
448 B.R. 684 (Bankr. D. Del. 2011) ..........................................................7

*DB Structured Prods., Inc. v. Am. Home Mortg. Holdings, Inc.* (*In re Am. Home Mortg. Holdings, Inc.*),
402 B.R. 87 (Bankr. D. Del. 2009) ..........................................................13

*In re Fleishman*,
138 B.R. 641 (Bankr. D. Mass. 1992) ........................................................8

*In re Fleming Cos.*,
499 F.3d 300 (3d Cir. 2007) .....................................................................12

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,
209 F.3d 252 (3d Cir. 2000) .....................................................................13

*In re G–N Partners*,
48 B.R. 462 (Bankr. D. Minn. 1985) ..........................................................8

*In re Gen. DataComm Indus., Inc.*,
407 F.3d 616 (3d Cir. 2005) .......................................................................5

*In re Hardie*,
100 B.R. 284 (Bankr. E.D.N.C. 1989) ........................................................8

*In re Hawker Beechcraft, Inc.*,
486 B.R. 264 (Bankr. S.D.N.Y. 2013) ........................................................5

*Javornick v. UPS*,
    No. 07-0195, 2008 U.S. Dist. LEXIS 75569 (W.D. Pa. Sept. 29, 2008)...............................14

*In re Kellstrom Indus., Inc.*,
    286 B.R. 833 (Bankr. D. Del. 2002) ....................................................................................7

*Mosley v. City of Pittsburgh Pub. Sch. Dist.*,
    No. 07-1560, 2009 U.S. Dist. LEXIS 81174 (W.D. Pa. Sep. 8, 2009)...................................14

*N.Y.C. Asbestos Litig. v. A.C. & S.*,
    838 N.Y.S.2d 76 (App. Div. 2007) ....................................................................................3, 4

*Otto Preminger Films, Ltd. v. Qintex Entm't, Inc. (In re Qintex Entm't, Inc.)*,
    950 F.2d 1492 (9th Cir. 1991) .............................................................................................10

*Ready Prods. Inc. v. Jarvis (In re Jarvis)*,
    No. 04-01097-JMD, 2005 WL 758805 (Bankr. D.N.H. Mar. 28, 2005) ...............................11

*SCR Joint Venture L.P. v. Warshawsky*,
    559 F.3d 133 (2d Cir. 2009)...............................................................................................14

*Seidlitz v. Auerbach*,
    230 N.Y. 167 (1920) ............................................................................................................3

*In re Spectrum Info. Techs., Inc.*,
    193 B.R. 400 (Bankr. E.D.N.Y. 1996)................................................................................11

*Steffan v. McMillan (In re Coordinated Fin. Planning Corp.)*,
    65 B.R. 711 (9th Cir. BAP 1986) ..........................................................................................8

*In re Stein & Day, Inc.*,
    81 B.R. 263 (Bankr. S.D.N.Y. 1988)..........................................................................8, 9, 10

*United Air Lines, Inc. v. Austin Travel Corp.*,
    867 F.2d 737 (2d Cir. 1989).................................................................................................3

*In re Waldron*,
    36 B.R. 633 (Bankr. S.D. Fla. 1984), *rev'd on other grounds*, 785 F.2d 936
    (11th Cir. 1986)...................................................................................................................8

*Westmoreland Coal Co. v. Entech, Inc.*,
    100 N.Y.2d 352 (2003) .......................................................................................................3

*Women's Interart Ctr., Inc. v. N.Y.C. Econ. Dev. Corp.*,
    No. 109017/07, 2014 WL 2126811 (N.Y. Sup. Ct. Apr. 28, 2014)........................................6

*In re WorldCom, Inc.*,
    343 B.R. 486 (Bankr. S.D.N.Y. 2006).........................................................................10, 11

**Statutes**

11 U.S.C. § 363..........................................................................................................................1

11 U.S.C. § 365..........................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 56.......................................................................................................................1

Fed. R. Bankr. P. 7056...............................................................................................................1

Lantern Entertainment LLC ("Lantern" or the "Plaintiff"), by and through its undersigned counsel, hereby submits this reply memorandum of law in further support of its motion ("the Motion") for entry of an order substantially in the form attached to the Motion as **Exhibit A** (the "Proposed Order"), pursuant to Federal Rule of Civil Procedure 56, and Rule 7056 of the Federal Rules of Bankruptcy Procedure, determining that no genuine issues of material fact exist regarding whether a specified contract is executory pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code").  In support of the Motion, Plaintiff respectfully states as follows:

## PRELIMINARY STATEMENT

1.      In September 2011, Cohen entered into a contract with The Weinstein Company pursuant to which he agreed to help produce the Picture.[2]  Production of the Picture was completed in 2012, and the Picture was released in November 2012.  Cohen has not rendered any production services in connection with the Picture in over five years.

2.      Cohen neither disputes that the primary purpose of the Agreement was production of the Picture, nor that the Picture was produced and released almost six years ago.  He also fails to meaningfully distinguish numerous authorities cited by Lantern holding that work-for-hire contracts—such as the Agreement at issue in this proceeding—are not executory when the work that is the subject of the contract was completed prior to the petition date.

3.      Rather, Cohen argues that the Agreement grants The Weinstein Company a right to terminate upon his breach of any provision contained therein, including those provisions that purport to contain ongoing obligations.  Thus, according to Cohen, each term in the contract is *per se* material, and consequently the breach of any term renders the Agreement executory with

---

[2] All defined terms used herein shall have the same definition as provided in the Motion.

no further analysis required.  None of the provisions in the Agreement, however, support his interpretation.  Cohen's argument is thus essentially a request that this Court rewrite the contract by inserting a broad right to terminate upon the breach of any provision in the Agreement.  Respectfully, the Court should reject Cohen's request.

4.      In the alternative, Cohen argues that several provisions containing purported ongoing obligations are independently material.  For the reasons discussed below, none of these arguments is well-founded.  Cohen's reliance on so-called "right of first refusal" and "right of first opportunity" provisions is misguided here, where the primary purpose of the Agreement is far removed from the subjects of these ancillary rights and where the rights themselves are insubstantial and remote.  Cohen has similarly failed to show that any of the other remaining obligations in the contract are material, particularly in light of Lantern's unrebutted authority to the contrary.

5.      In short, the primary purpose of the Agreement—i.e., Cohen's production services—has been realized, and the Agreement is therefore not executory.

## ARGUMENT

### I.      THE AGREEMENT IS NOT EXECUTORY

#### A.      The Parties Have Substantially Performed

6.      The Weinstein Company entered into the Agreement with Cohen in order to enlist Cohen's production services in connection with the Picture.  Cohen completed his production services almost six years ago, when the film was produced and released in 2012.  Because he cannot dispute these facts, Cohen attempts to rewrite the Agreement instead.

7.      Cohen argues that the Agreement allows The Weinstein Company to terminate the contract "in the event of a breach *of any term* by the artist" and thus "all of the provisions of

the Cohen Agreement [are] material." *Answering Brief of Defendants Bruce Cohen Productions and Bruce Cohen in Support of Opposition to Plaintiff's Motion for Summary Judgment* [A.D. 10] (the "Opposition") at 19, 21 n.8 (emphasis added).  Thus, according to Cohen, the existence of *any* ongoing obligation renders the Agreement executory without further analysis regarding its materiality or the parties' substantial performance.

8.      But Cohen's factual premise is simply wrong, as the Agreement does not have the broad termination clause he would like.   Therefore, the Agreement does not support his revisionist interpretation.

9.      "A written contract [should] be read as a whole, and every part will be interpreted with reference to the whole."  *Westmoreland Coal Co. v. Entech, Inc.*, 100 N.Y.2d 352, 358 (2003)  (internal quotations omitted).  "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing."  *In re AMR Corp.*, 562 B.R. 20, 39 (Bankr. S.D.N.Y. 2016) (applying New York law).  Courts should be especially cautious to add a termination clause where none exists, because the right to abrogate "must be ***explicitly stated*** in the agreement of the parties."  *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 741 (2d Cir. 1989) (emphasis added) (citing *Seidlitz v. Auerbach*, 230 N.Y. 167 (1920)).

10.      Moreover, the parties' inclusion of language in one provision of a contract is strong evidence of their intent to exclude such language in another provision of the contract.  *See In re AMR Corp.*, 562 B.R. at 38 ("[L]anguage in one part of the [contract] . . . strongly suggests that the parties intended to exclude such . . . language from other parts of the [contract]."); *see also N.Y.C. Asbestos Litig. v. A.C. & S.*, 838 N.Y.S.2d 76, 80 (App. Div. 2007) (a "standard

canon of contract construction . . . is that the expression of one thing implies the exclusion of the other").

11.    In *AMR*, for example, the debtors argued that payments to certain claimants should be made net of taxes anticipated to be paid on account of the relevant claims because such claims had been "deemed" reduced by tax payments.  562 B.R. at 38.  The court rejected this interpretation of the Plan.  Among other reasons, the court noted that the "deeming" language appeared in a provision reducing employees' payments from taxes, but not specifically the Claimants' payments.  The presence of the word "deeming" in one part of the Plan and not another "strongly suggest[ed] that the parties intended to exclude such 'deeming' language from other parts of the Plan."  562 B.R. at 38;  *see also In re N.Y.C. Asbestos Litig.*, 838 N.Y.S.2d at 80 (declining to apply a "sole active negligence" exception in an indemnification clause to negligence that was not the result of the party's sole negligence, because the exception to the indemnification clause appeared nowhere else in the contract).

12.    Cohen's theory that the inclusion of a handful of provisions in the Agreement that excuse The Weinstein Company's partial performance from discrete obligations in the event of Cohen's breach illustrates that the parties intended to allow The Weinstein Company to terminate the Agreement upon the breach of any and "*all* of the provisions of the Cohen Agreement" is wholly unsupported.  Opp'n at 19.  None of the provisions on which Cohen relies states that The Weinstein Company may terminate the Agreement if Cohen breaches.  Rather, they simply state that The Weinstein Company would not be obligated to perform certain commitments, such as paying a contingency bonus.  *See, e.g.*, Agreement ¶ 3; *see also id.* ¶ 4 (excusing The Weinstein Company from providing Cohen with "[p]roduced by" credits).  The

Court should decline to "read into the sections relied upon . . . an unexpressed intent . . . that does not appear in the text" of the contract. *In re AMR Corp.*, 562 B.R. at 39.

13.    Extending a right to terminate in the absence of clear contractual language is particularly inappropriate here, where the Agreement includes an explicit termination clause that does not appear in the provisions cited by Cohen. Indeed, the only provision in the Agreement that allows The Weinstein Company to terminate the contract due to Cohen's non-performance is paragraph 11 of the Agreement, which explicitly states that Cohen's failure to complete and deliver a Form I-9 verifying his employment eligibility within three days of execution of the Agreement gives The Weinstein Company "the right . . . to terminate the Agreement and thereupon Artist's engagement hereunder shall cease and terminate and neither party shall have any right, duty or obligation to the other under this Agreement." Agreement ¶ 11. This "right to terminate" language does not appear anywhere else in the Agreement. Its inclusion in paragraph 11 illustrates that the parties clearly contemplated a termination clause for certain provisions *but not others*. Thus, the only contract term that grants The Weinstein Company a right to terminate upon a breach pertained to Cohen's submission of an I-9 form, an obligation that expired years ago and therefore cannot render the contract executory.[3]

14.    The cases Cohen cites do not alter this result, because the agreements at issue in those cases explicitly allow the non-breaching party to terminate the contract upon the breach of ongoing, rather than expired, obligations. *See In re Gen. DataComm Indus., Inc.*, 407 F.3d 616, 623-24 (3d Cir. 2005) (benefit plan found to be executory where employee's breach of ongoing provisions gives employer the right to "***terminate the status*** of such person as an Eligible

---

[3] Moreover, Cohen's theory that his breach of any provision in the Agreement would excuse The Weinstein Company's substantial performance is also negated by the fact that the Agreement imposes obligations on The Weinstein Company that exist without any mention of Cohen's potential breach. *See, e.g.*, Agreement ¶ 8 (use of Cohen's likeness with no mention of Cohen's breach); *see also id*. ¶ 5 (travel expenses covered with no mention of Cohen's breach).

Executive" thereby terminating all his benefits); *In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 270, 278-79 (Bankr. S.D.N.Y. 2013) (purchase agreement found to be executory where manufacturer had "***the right to terminate*** this Agreement" if the buyer "***breaches any term or condition*** contained in this Agreement in any material respect"). In short, Cohen's theory that the parties intended "to make all the provisions of the Cohen Agreement material" holds no water.

15.    Finally, because Cohen's theory that only complete performance will satisfy the Agreement is incorrect on a number of grounds, his summary rejection of *Exide*'s substantial performance doctrine is simply wrong. Indeed, the cases cited by Cohen at pages 19-20 of the Opposition are inapposite, as both involved admitted breaches that triggered explicit termination clauses and thus prevented the court from applying the substantial performance doctrine. *See Avant Guard Props., LLC v. N.Y.C. Indus. Dev. Agency*, No. 115209/10, 2015 WL 7070066, at *5 (N.Y. Sup. Ct. Jan. 7, 2015) (declining to apply doctrine of substantial performance where lease included "termination provisions . . . which permit[ted] termination of the agreement upon the happening of certain events of default," including the breaching party's admitted subletting); *Women's Interart Ctr., Inc. v. N.Y.C. Econ. Dev. Corp.*, No. 109017/07, 2014 WL 2126811, at *8 (N.Y. Sup. Ct. Apr. 28, 2014) (same where contract stated that default in "the performance of ***any of its . . . obligations*** under this Contract" gave the non-breaching party "***the right to terminate***" and breaching party admitted to being in default).

16.    Here, as noted above, the only clause that explicitly allows The Weinstein Company to terminate upon Cohen's breach has long since expired. Thus, the Court must apply the substantial performance doctrine in analyzing whether the Agreement's remaining obligations are material. In short, Lantern respectfully directs the Court to the authorities cited in

its Motion holding that substantial performance applies in this case and, in a talent contract like the one before this Court, the completion of the work renders the contract nonexecutory. *See* Motion § II.A-B.[4]

### B.    Any Remaining Obligations Under the Contract Are Immaterial

> a.    *The rights of first refusal and opportunity provisions do not render the Agreement executory*

17.    Cohen argues that the Agreement is executory because it grants Cohen a right of first opportunity with respect to the provision of production services in connection with subsequent productions related to the Picture, and provides The Weinstein Company with a right of first refusal with respect to Cohen's ability to assign his contingent compensation to third parties. Cohen does not, and indeed cannot, argue that either of the two provisions is relevant to the Agreement's primary purpose—i.e., to secure production services in connection with a film that was completed years ago.

18.    Instead, Cohen relies on two decisions by this Court which he claims compel a finding that the existence of a right of first refusal in a contract renders that contract executory, without any further analysis. Opp'n at 22 (citing *In re CB Holding Corp.*, 448 B.R. 684 (Bankr. D. Del. 2011) (Walrath, J.), and *In re Kellstrom Indus., Inc.*, 286 B.R. 833 (Bankr. D. Del. 2002) (Walrath J.)). But these decisions are inapplicable here.

19.    In *Kellstrom*, the contract at issue included a right of first refusal obligating the debtors to notify the contract counterparty of any offer to purchase real property and to permit the counterparty to purchase that property if it matched the price. 286 B.R. at 834. The contract

---

[4] Cohen argues that Lantern has failed "to establish with[] any admissible evidence" that the parties have substantially performed, Opposition at 19, even though Lantern makes clear in the Motion that it is relying on Cohen's admission about the completion of the Picture and Mr. Reiter's testimony regarding same. Motion at 4. Cohen does not dispute these facts, and he fails to explain why such evidence is inadmissible. He also attempts to discredit Lantern's use of this evidence without "any discovery conducted," but at the same time stops short of asking the Court for discovery on any of the issues raised by the Motion.

at issue in *CB Holding* was a lease that included a provision giving the landlord the right of first refusal to purchase the lessee restaurant's liquor license for $100,000.  448 B.R. at 686.  In both cases, the right of first refusal formed the primary purpose of the contract and/or was directly related to its core purpose, and involved the *right to purchase concrete, existing property under defined terms*.

20.     None of those conditions exist here, where the terms at issue are unrelated to the purpose of the contract—production of the Picture—and relate either to (1) a right to negotiate a contract regarding an as-of-yet nonexistent film under undetermined terms, or (2) a right of first refusal with respect to Cohen's assignment of "entirely speculative" contingent compensation. Agreement ¶ 13 & *id.* Ex. CB ¶ 3.5.  These ancillary terms to the Agreement are simply not comparable to the rights of first refusal implicated in *Kellstrom* and *CB Holding*, which rights went to the very core of the contracts analyzed in those cases—options to purchase real, existing property.  Indeed, every case relied upon by the Court in *Kellstrom* and *CB Holding* is consistent with these key distinctions, as they each concerned option agreements for the sale of property under specific and defined terms.[5]

21.     The other cases cited by Cohen are similarly distinguishable.  As Cohen concedes, the *In re Abitibibowater* court determined that "the root or essence of the contract" at issue in that case was an option to purchase certain shares at a set price.  *In re Abitibibowater Inc.*, 418 B.R. 815, 830-31 (Bankr. D. Del. 2009); Opp'n at 24.  *In re A.J. Lane & Co.*, 107 B.R. at 437

---

[5] *See Steffan v. McMillan* (*In re Coordinated Fin. Planning Corp.*), 65 B.R. 711, 712 (9th Cir. BAP 1986) (considering a right of first refusal to purchase interest in property extended at the same terms as the proposed sale); *In re Fleishman*, 138 B.R. 641, 646–47 (Bankr. D. Mass. 1992) (considering a right of first refusal to purchase a lot of land at the same price and terms as the proposed sale); *In re A.J. Lane & Co.*, 107 B.R. 435, 435 (Bankr. D. Mass. 1989) (considering a repurchase option for real property for the same price the debtor paid, less any debt secured by encumbrances); *In re Hardie*, 100 B.R. 284, 285 (Bankr. E.D.N.C. 1989) (considering an option to purchase property for $65,000); *In re G–N Partners*, 48 B.R. 462, 463-64 (Bankr. D. Minn. 1985) (considering an option agreement with specified terms of sale); *In re Waldron*, 36 B.R. 633, 636–37 (Bankr. S.D. Fla. 1984) (considering an option to purchase real property with specified terms of sale), *rev'd on other grounds*, 785 F.2d 936 (11th Cir. 1986).

dealt with a repurchase option contained in a deed of real property similar to the option at issue in *Kellstrom*. Unlike the provisions at issue here, these options were essential to the contract in each case.

22.    Finally, Cohen's attempt to distinguish *Stein & Day* is unpersuasive. Cohen relies on the fact that the provision at issue in that case provided an "opportunity" rather than an "option," but this is a distinction without a difference. As he admits, the agreement between the author and the debtor publisher in *Stein & Day* provided the debtor an opportunity to publish the author's next book "on terms to be agreed," just like the opportunity provided in the Agreement. *In re Stein & Day, Inc.*, 81 B.R. 263, 266-67 (Bankr. S.D.N.Y. 1988); Agreement ¶ 13 (providing Cohen with the first opportunity to produce an as-of-yet nonexistent film related to the Picture "on terms to be negotiated in good faith"). In *Stein & Day*, like here, the author was "not committed to the publisher and may agree to have his next book published by another publisher on more favorable terms than offered by the debtor." *Stein & Day*, 81 B.R. at 266-67; Agreement ¶ 13 (The Weinstein Company "shall have the right to engage alternative producers and shall have no further obligation to [Cohen]. . . if no agreement is reached between [The Weinstein Company] and [Cohen]."). The mere fact that the terms of the Agreement provided a floor for negotiations does not alter the tenuous nature of the opportunity provided.

23.    In sum, the rights of first opportunity and of first refusal are too removed from the Agreement's primary purpose to support Cohen's claim that the Agreement is executory in nature. The Court should hold that these provisions are ancillary, immaterial terms of the contract, and do not change the nonexecutory nature of the Agreement.[6]

---

[6] Cohen does not meaningfully address Lantern's alternative argument that the option fails to satisfy New York's Statute of Frauds, and Lantern rests on the arguments advanced in its Motion.

b.    *None of the other remaining obligations are material*

24.    Cohen and Lantern agree that, "for a breach of a contract to be material, it must go to the root of the agreement between the parties." Opp'n at 27. But Cohen argues that the "root" purpose of the Agreement includes the marketing and distribution of the Picture. Cohen argues that it "makes sense" that his contingent compensation is tied to The Weinstein Company's ability "to successfully distribute the Picture," because "a film that cannot be exploited or distributed has little or no value to a film studio." Opp'n at 28. That may or may not be true, but Cohen's theorizing is not evidence that the purpose of Cohen's agreement goes beyond his production of the Picture.

25.    Cohen cites to various obligations under the contract that he argues are "material" because they relate to The Weinstein Company's distribution and marketing of the Picture, such as The Weinstein Company's rights of ownership over Cohen's work, Cohen's warranty that his work is original, an indemnification clause tied to this warranty, and Cohen's obligation to refrain from seeking to enjoin the distribution of the Picture. Agreement ¶ 20. However, the authorities cited by Lantern in its Motion at pages 10 and 11 considered similar ongoing rights and obligations when holding that completion of the work for which the artist was hired rendered the contract nonexecutory. *Otto Preminger Films, Ltd. v. Qintex Entm't, Inc.*, (*In re Qintex Entm't, Inc.*), 950 F.2d 1492, 1494, 1497 (9th Cir. 1991) (talent contract is nonexecutory "[i]n spite of" actor's ongoing promise not to sell production rights to third parties, actor granting production company "all rights of any kind or nature . . . in and to and derived from the product [of his] services, and an "obligation[] to indemnify for breaches and cooperate in joint defense with Qintex"); *see also In re Stein & Day*, 81 B.R. at 264-65 (author's contract with publisher is nonexecutory despite the publisher's ongoing right to apply for a copyright in the author's name, an obligation on the owner of the copyright to join an infringement lawsuit if the non-owner

party to the agreement decided to sue, and warranties by the author as to both ownership and non-infringement, among other ongoing obligations).  Cohen makes no meaningful attempt to distinguish these authorities.

26.     *WorldCom*, cited by Cohen, does not warrant a different result.  Opp'n at 29.  In that case, the court held that a settlement agreement was an executory contract because an ongoing obligation on the part of one of the parties (Dobie) to refrain from vacating a state court judgment that was entered ***pursuant to the terms of the very settlement agreement at issue*** was material.  *In re WorldCom, Inc*., 343 B.R. 486, 494-95 (Bankr. S.D.N.Y. 2006).  For this reason, the court held that this obligation went to the "the heart of the settlement of the State Action." *Id*. at 494.  The court noted that without the promise "to refrain from challenging the State Court Consent Judgment, entry into the Amended Settlement Agreement would not have occurred . . . The agreement [to pay] . . . was given mainly in return for Dobie giving up its right to challenge the State Action."  *Id*. at 496.  Indeed, the court noted that the obligation at issue was so central to the agreement that it warranted a departure from the well-established principal that "restrictive covenants do not constitute material provisions of a contract."  *Id*. (collecting cases).

27.     Here, however, Cohen has not shown that his promise to refrain from filing an injunction goes "to the heart" of the Agreement.  Opp'n at 30 (citing *WorldCom*).  Unlike the obligation at issue in *WorldCom* to refrain from taking legal action, which served as the main purpose of the agreement of settling a state court dispute, Cohen's obligation to refrain from filing an injunctive action is far removed from his primary obligation to provide production services.  His proclamations that "without this obligation, SLP Films/TWC would be unable to distribute and exploit the Picture" and "no studio would ever make a film without [such] an agreement" are purely speculative and unsupported by evidence.  Opp'n at 30.

28.     In this regard, the issue presented here is more akin to the bankruptcy cases cited by *WorldCom* holding that ancillary restrictive covenants "create passive not affirmative obligations" which are generally not material and therefore cannot render a contract executory. *See, e.g.*, *Ready Prods. Inc. v. Jarvis* (*In re Jarvis*), No. 04-01097-JMD, 2005 WL 758805, at *3-4 (Bankr. D.N.H. Mar. 28, 2005) (settlement agreement was not an executory contract because "the non-disparagement clause, a passive restrictive covenant, is not a material provision"); *In re Spectrum Info. Techs., Inc.*, 193 B.R. 400, 404 (Bankr. E.D.N.Y. 1996) (employment agreement was not an executory contract because "the sole remaining obligation . . . was compliance with a 'non-interference with contractual relationship' clause" which is "a contingent obligation not rising to the requisite level of materiality necessary to be considered executory under section 365(a)"). In sum, the inclusion of immaterial, non-core provisions that may still be operative do not render a contract executory where the contract has been substantially performed by both parties and its primary purpose has been satisfied.

## II.     THE DEBTORS TRANSFERRED ANY AND ALL RIGHTS OR ASSETS TO LANTERN PURSUANT TO THE APA

29.     Cohen argues that regardless of how the Court adjudicates the question of whether the Agreement is executory, Lantern remains subject to ongoing obligations imposed by the Agreement according to the *cum onere* principle. Cohen's argument is meritless.

30.     The *cum onere* principle is typically applied in the context of the assumption of contracts under Bankruptcy Code section 365, not section 363 sales. *See, e.g.*, *In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder." (citing *In re ANC Rental Corp.*, 277 B.R. 226, 238 (Bankr. D. Del. 2002))). Lantern purchased The Weinstein Company's assets, including the Agreement, pursuant to a section 363 sale "Free and Clear of All Liens, Claims, Interests,

Encumbrances and Other Interests," as explicitly provided in the title of the Sale Order entered

by this Court. [D.I. 846.] In addition, as set forth in Lantern's Motion, the APA provides that, to

the extent a contract is deemed to be nonexecutory, Lantern acquired all contractual rights owned

by The Weinstein Company under that contract "free and clear of all Liens . . . to the fullest

extent permitted by Section 363 of the Bankruptcy Code." APA § 7.5 [D.I. 846-1, at 36].

Accordingly, the plain language of the Sale Order and the APA refutes Cohen's argument.[7]

31.     The cases that Cohen cites in the Opposition do not support, and indeed

undermine, his position. Opp'n at 32 (citing *Folger Adam Sec., Inc. v. DeMatteis/MacGregor*

*JV*, 209 F.3d 252 (3d Cir. 2000), and *DB Structured Prods., Inc. v. Am. Home Mortg. Holdings,*

*Inc.* (*In re Am. Home Mortg. Holdings, Inc.*), 402 B.R. 87 (Bankr. D. Del. 2009)). *Folger Adam*

involved questions of whether affirmative defenses constitute "interests" that could be

extinguished pursuant to a section 363 sale, and whether the debtors in that case provided

constitutionally adequate notice of the sale to the aggrieved creditor. *American Home Mortgage*

dealt with an objection to a proposed sale of servicing rights accompanying certain mortgage

loans acquired by the objecting lender. Indeed, in that case, this Court observed:

> The Court reads *Folger Adam* to stand for the two propositions of
> particular importance to these proceedings: *first*, that section 363 of the
> Bankruptcy Code permits a debtor to transfer its rights and obligations
> under a non-executory contract; *second*, that section 363(f)(5) permits
> the rights and obligations under one non-executory contract to be
> transferred free and clear of claims arising under other contracts.

402 B.R. at 94. Thus, *Folger Adam* and *American Home Mortgage* reinforce the fact that

Lantern acquired the Agreement free and clear of all liens, claims, interests, and other

encumbrances, as specified in the Sale Order and the APA.

---

[7] Cohen's claim that "Lantern has not explained how, if at all, the APA or the Sale Order change this result [that allowing Lantern to avoid ongoing obligations under the Agreement violates the *cum onere* principle]" (Opp'n at 33 n.12) is mistaken as Lantern discussed the Sale Order and the APA in the Motion. [A.D. 7, at 4-5].

32.     Accordingly, Cohen's argument that Lantern remains subject to ongoing obligations under the Agreement is without merit.

## III.    NONE OF COHEN'S REMAINING ARGUMENTS DEFEAT LANTERN'S MOTION

33.     Cohen raises several other arguments that likewise fail to defeat Lantern's Motion.

34.     First, Cohen argues that Lantern has failed to prove that The Weinstein Company acquired the Agreement from SLP Films, the signatory to the Agreement.  As a preliminary matter, Cohen does not dispute that such an acquisition took place—only that Lantern has failed to prove it.  Nor does Cohen seek discovery on this issue to refute Lantern's claim.  Cohen's half-hearted efforts in this regard make sense, as he seeks to hold Lantern subject to the ongoing obligations in the Agreement and gains nothing if the acquisition did not take place.  In short, Cohen is not seriously contesting The Weinstein Company in fact owns the Agreement, and the Court should disregard this argument.

35.     Notwithstanding the foregoing, Lantern has provided evidence of The Weinstein Company's acquisition of the Agreement through the declaration of Irwin Reiter, a current Lantern executive who served a similar role at The Weinstein Company.  Mr. Reiter testified about The Weinstein Company's general corporate structure and the Agreement's chain of title, information he is reasonably expected to have as an executive who deals directly with the financial side of talent agreements.  *See generally Declaration of Irwin Reiter in Support of Plaintiff's Motion for Summary Judgment to Determine the Nonexecutory Nature of a Contract* [A.D. 8]; *see also SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138–39 (2d Cir. 2009) (lower court erred by striking former vice president's affidavit from consideration on summary judgment where he based his statement upon sufficient personal knowledge given his position

within the company even though the phrase "to my knowledge," may "inject a level of uncertainty" in other circumstances).[8]    Mr. Reiter is ready and willing to provide further foundation for his testimony if required.

36.    Finally, Cohen argues that this adversary proceeding is precluded by the Sale Order under the law of the case doctrine.  Cohen is again incorrect.

37.    The Sale Order defines the Debtors' treatment of "Assumed Contracts" as "executory contracts . . . that are proposed to be assumed and assigned pursuant to the APA." [D.I. 846, at 2 (emphasis added).]    Paragraph 29 of the Sale Order authorized the Debtors to assume and assign the Assumed Contracts identified on a notice that was filed with the Court on May 10, 2018.  *See* [D.I. 846 ¶ 29].  That notice was entitled, "Notice of Filing of Final List of Potentially Assumed Contracts and Leases" (the "Initial Notice"), and explicitly stated that "the presence of an Assumed Contract and Lease listed on Exhibit 1 attached hereto **does not constitute an admission** that such Assumed Contract and Lease is an executory contract or unexpired lease or that such Assumed Contract and Lease will be assumed and assigned as part of the Sale."  [D.I. 860, at 2 (emphasis added).]    At no point did the Sale Order or the Initial Notice impose upon the Debtors an obligation to assume and assign the Agreement.

38.    Paragraph 32 of the Sale Order is the operative paragraph that details which contracts will, in fact, be Assumed Contracts under the APA.  That paragraph, *inter alia*, obligates the Debtors to file a Final Cure Notice, "which identifies which Assumed Contracts

---

[8] Neither of the two cases that Cohen cites regarding the admissibility of affidavits is relevant to Mr. Reiter, whose position within upper-level management in the company allows him to testify to general, well-known management structure and operations.  *See Mosley v. City of Pittsburgh Pub. Sch. Dist.*, No. 07-1560, 2009 U.S. Dist. LEXIS 81174, at *3 (W.D. Pa. Sep. 8, 2009); *Javornick v. UPS*, No. 07-0195, 2008 U.S. Dist. LEXIS 75569, at *6 (W.D. Pa. Sept. 29, 2008).  The court in *Mosley* unsurprisingly struck portions of the plaintiff employee's own affidavit where he speculated the reasons for his termination using language such as "probably," and "it is possible."  2009 U.S. Dist. LEXIS 81174, at *3-4.  Similarly, the affidavits in *Javornick* were struck for the declarants' lack of personal knowledge where the declarants were former employees who speculated on the rationale behind the plaintiff's termination, and "never contend[ed] that they were contemporaneously aware of, or involved in, the circumstances leading up to [the plaintiff's] termination."  2008 U.S. Dist. LEXIS 75569, at *8.

and Leases are Assumed Contracts (as defined in the APA) . . . and the Cure Amount, if any," and allows counterparties to file Final Cure Objections.  *See* [D.I. 846 ¶ 32.]  Paragraph 35 of the Sale Order, which Cohen cites in his Opposition, states that each Assumed Contract or Lease that is considered an Assumed Contract under the APA shall "constitute[] an executory contract or unexpired lease under Bankruptcy Code section 365."   In other words, it is the Assumed Contracts and Leases identified in the Final Cure Notice that are actually assumed by the Debtors—not the potentially Assumed Contracts and Leases identified in the Initial Notice—that constitute executory contracts or unexpired leases under Bankruptcy Code section 365.

39.     In short, the executory nature of the Agreement has yet to be adjudicated, as the Court is well aware.  *See, e.g.*, *In re The Weinstein Co. Holdings LLC*, No. 18-10601 (MFW), Tr. of July 11, 2018 Hr'g at 32:15-21& 51:11-52:18 (Judge Sontchi's statements on the record that both the APA and the Amended APA "that Judge Walrath approved contemplate[] . . . closing prior to an assumption" and that "this is rather standard that the closing will occur prior to executory contracts being definitely determined," and acknowledging that the Court would need to handle assumption issues "at the appropriate time if and when that occurs.").  Indeed, Cohen's counsel has previously admitted the same on the record.  *See id.*, Tr. of Aug. 23, 2018 Hr'g at 20:15-17 ("Well if Lantern wants a determination by this court to legitimize its position [that the talent contracts are not executory], then it should bring an adversary proceeding to that effect.").  Accordingly, the Court should reject Cohen's argument that the current proceeding is precluded by the Sale Order.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## **CONCLUSION**

40.    In light of the foregoing, Plaintiff respectfully requests that this Court grant summary judgment in its favor and declare that the Agreement is a nonexecutory contract that was transferred to Lantern pursuant to the Sale Order free and clear of any claims arising thereunder pursuant to Bankruptcy Code section 363.


Dated:  November 8, 2018
Wilmington, DE

Respectfully Submitted,

/s/ Evelyn J. Meltzer
David B. Stratton (No. 960)
Evelyn J. Meltzer (No. 4581)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19801
Telephone: (302) 777-6500
Facsimile: (302) 421-8390

-and-

Michael S. Stamer (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
Joseph L. Sorkin (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Attorneys for Lantern Entertainment LLC*